Donald G. JACKSON *v.* Emily Joy JACKSON

88-187                                      765 S.W.2d 561

Supreme Court of Arkansas
Opinion delivered February 20, 1989

*Herrods of Arkansas, P.A.,* by: *E.H. ("Buzz") Herrod,* for appellant.

*Wilson & Associates, P.A.,* by: *Jack T. Lassiter,* for appellee.

Tom Glaze, Justice. This appeal ensues from a divorce case and involves marital property issues that arise out of appellee's inheritance of certain stock and the later purchase of her sister's one-half interest in real property that she and her sister inherited from their mother. Both of these events, the inheritance and purchase of property, occurred when appellee was married to the appellant. The chancellor held appellant acquired no marital interest in either the stock or real property, and in an unpublished

opinion, the court of appeals affirmed. This court granted review pursuant to Ark. Sup. Ct. R. 29(1)(c).

We first consider the house and real property that the appellee and her sister inherited from their mother. The sisters each owned an undivided one-half interest in the property. By agreement with her sister, appellee and her husband, appellant, moved into the house, which is located in the Pleasant Valley Subdivision in Little Rock. Appellee and appellant made improvements on the property with monies appellee testified were her separate funds, which were monies from nonmarital stock inherited from her mother.

At this time, the parties were experiencing marital unrest. For that reason, appellee stated that when her sister offered to sell her one-half interest, appellee bought her sister's interest by taking title in her name alone and paying her sister $67,850.31, which were funds appellee withdrew from her separate stockbroker account. That account contained the stock that appellee had inherited from her mother. In purchasing her sister's interest, appellee concedes that she first deposited the funds drawn from her stock account into a joint checking account, bearing both appellant's and appellee's names. After depositing these funds, she wrote a check payable to her sister for $67,850.31, which was the full amount of the purchase. Appellant argues that, when appellee placed her nonmarital funds into the parties' joint checking account, appellant acquired a one-half interest in those funds, as well as the sister's one-half interest, which was purchased by with those funds.

In *McEntire* v. *McEntire*, 267 Ark. 169, 590 S.W.2d 241 (1979), the court recited the established rule that the estate by the entireties may be created in personal property. It stated, noting Ark. Stat. Ann. § 67-552 (Supp. 1965) (now Ark. Code Ann. § 23-32-1005 (1987)), that a bank account held in the names of persons who designate themselves as husband and wife is the property of such persons as tenants by the entireties and upon the death of one of the persons, the account is payable to the survivor. The court further noted that an estate by the entireties in a bank account differs in one significant aspect from an estate in real property in that the estate exists in the account only until one of the tenants withdraws such funds or dies leaving a balance

in the account and that the funds withdrawn or otherwise diverted from the account by one of the tenants and reduced to that tenant's separate possession ceases to be a part of the estate by the entireties. *See also Black* v. *Black*, 199 Ark. 609, 135 S.W.2d 837 (1940); `Hayse` v. *Hayse*, 4 Ark. App. 160-B, 630 S.W.2d 48 (1982).[1]

In *Ramsey* v. *Ramsey*, 259 Ark. 16, 531 S.W.2d 28 (1975), this court further discussed tenancy by the entirety and held that the acquisition of property, whether realty or personalty, by persons who are husband and wife by an instrument running to them conjunctively, without specification of the manner in which they take, usually results in a tenancy by the entirety. The court added that there is at least a presumption that the taking in such circumstances is by the entirety. The court added that the fact that the consideration given by the property taken in the two names belong to one spouse only is of little, if any, significance where he or she is responsible for the property being taken in both names as the presumption is that there was a gift of an interest by the husband to the wife, even though the wife may have no knowledge of the transaction. Importantly, the *Ramsey* court held that the presumption is strong, and it can be overcome only by clear, positive, unequivocal, unmistakable, strong, and convincing evidence, partially because the alternate is a resulting trust the establishment of which, under circumstances, requires that degree of proof.

In the present case, the chancellor concluded, correctly we believe, that appellee should be entitled to her inherited or nonmarital funds, unless she did something to destroy the nonmarital status of those funds. Clearly, appellee had the right to withdraw the funds she deposited in the parties' joint account and, as pointed out in *McEntire*, the mere depositing of those nonmarital funds into the parties' bank account did not render them forever funds owned by the entirety. The chancellor found that appellee merely "poured" her nonmarital funds in and out of the parties' checking account, so she would have a receipt and

---

[1] The court in *McEntire* offered a caveat that in a proper case, fraud or some other remedy may still be available to sustain an action to recover funds withdrawn or diverted by a co-tenant.

record of the real estate transaction with her sister—a record appellee deemed necessary for the Internal Revenue Service. Also, significantly, the trial judge found appellee took title to the house in her name only, and he obviously believed her testimony that she intended to keep her funds and property separately since the parties were experiencing marital discord. The appellee testified she rejected appellant's suggestion that they obtain a loan to purchase the sister's interest because, to do so, would necessitate placing the property in both her name and the appellant's. The chancellor further found the appellant exercised no dominion and control over appellee's funds, and he was convinced that appellee never intended to make a gift of those nonmarital funds and property to appellant.[2] We believe the record readily supports the chancellor's findings in these respects. Our inquiry, however, does not end at this point.

We next must decide whether the one-half interest the appellee purchased from her sister is marital property subject to division under Ark. Code Ann. § 9-12-315 (Supp. 1987). Under § 9-12-315(b), all property acquired by either spouse subsequent to the marriage is marital property, unless it falls within one of five statutory exceptions. *See Wagoner* v. *Wagoner*, 294 Ark. 82, 740 S.W.2d 915 (1987); *Day* v. *Day*, 281 Ark. 261, 663 S.W.2d 719 (1984). Of course, the appellee, during her marriage to appellant, acquired the property from her sister but did so, as we concluded above, by using her inherited or nonmarital funds. Based upon the record before us, appellee's acquisition would appear to be included—if at all—within the exception set out in § 9-12-315(b)(2) which provides as follows:

> Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired

---

[2] On this point, the dissenting opinion refers to *Lofton* v. *Lofton*, 23 Ark. App. 203, 745 S.W.2d 635 (1988), and erroneously concludes that the court in *Lofton* reached a different holding to the one here. The court in *Lofton*, citing *McEntire* v. *McEntire*, 267 Ark. 169, 590 S.W.2d 241 (1979), employed the same legal analysis as we have in this case, but the *Lofton* court merely concluded that, in reviewing the record, no clear and convincing evidence was presented to overcome the presumption that certain certificates of deposit were owned by the parties as tenants by the entirety. In the instant case, we merely affirm the trial court, by holding that clear and convincing evidence was presented to overcome the presumption of ownership as tenants by the entirety.

by gift, bequest, devise, or descent.

Although our court has not directly construed or interpreted the foregoing exception, other jurisdictions, with identical provisions, have. *See* Ora Fred Harris, Jr., *The Arkansas Marital Property Statute and the Arkansas Appellate Court: Tiptoeing Together Through the Tulips*, 7 UALR L.J. 1, 44 (1984) (which, in footnote 253, lists twelve states that have statutes that embrace this same exception). In *Stevens* v. *Stevens*, 448 A.2d 1366 (Me. 1982), the Supreme Judicial Court of Maine, in considering a provision identical to Arkansas's "exchange" provision, concluded that only that portion of the property acquired during marriage in exchange for the nonmarital property should be set aside as nonmarital property. The Maine court, adhering to the tracing or source-of-funds theory adopted by that court earlier, further stated that an exchange of a nonmarital interest for other property after marriage will yield only a nonmarital interest proportionate in value in the newly acquired property. *See also Tibbetts* v. *Tibbetts*, 406 A.2d 70 (Me. 1979); *Hoffmann* v. *Hoffmann*, 676 S.W.2d 817 (Mo. 1984) (en banc).

In *Potter* v. *Potter*, 280 Ark. 38, 655 S.W.2d 382 (1983), this court, relying in part on the *Tibbetts* case where the Maine court first discussed and applied the tracing or source-of-funds theory, held Mr. Potter was entitled to a separate interest in a lot and house in the amount of $9,656.08, since that sum was directly traceable to the proceeds of the sale of property he owned prior to marriage. Later in *Canady* v. *Canady*, 290 Ark. 551, 721 S.W.2d 650 (1986), this court said that while the tracing of nonmarital money or property into other forms may be an important tool, or means to an end, we cautioned that tracing is not intended to be an end in itself. In further explanation, we said:

> The fact that one spouse made contributions to certain property does not necessarily require that those contributions be recognized in the property division upon divorce. It was certainly not our intention to state an opposite point of view in *Potter* v. *Potter*, 280 Ark. 38, 655 S.W.2d 382 (1983). We have no doubt that the tracing of funds and even the acquisition of property before the marriage or by gift during the marriage might be inconsequential when considered at the dissolution of a marriage that had lasted

for many years and had left the parties with decidedly unequal means for supporting themselves in the future.

■■ Based upon the record in the instant case, we discern no reasons why appellee should not be entitled to her nomarital property. No doubt exists that the funds used to purchase the sister's one-half interest in the house and property were directly traceable to appellee's nonmarital stock. Therefore, under the source-of-funds theory, she is clearly entitled to an award of, or to be credited with, the purchase amount, or $67,850.13, which was paid on October 30, 1986. Even so, the property, at the time of divorce in July 1987, was valued at $167,500.00 by appellant's expert witness, and in view of that unrebutted value testimony, it appears either that the appellee purchased her sister's undivided interest at a below market price or the property appreciated in value between the time of purchase and the date of the parties' divorce. Either way, in using the $167,500.00 value figure and crediting the appellee with her one-half nonmarital interest in the property and with her nonmarital funds used to buy her sister's one-half, appellant would be entitled to a one-half interest, $7,950.00, in the remaining increased value in the property which was $15,900.00.

■■ Appellant next argues he is entitled to an interest in certain First Federal bonds and Baptist Building bonds purchased during the parties' marriage by appellee with her nonmarital funds and also to an interest in the increase in value of appellee's stock portfolio. We find no merit in either contention. Unquestionably, appellee used nonmarital funds to acquire the bonds in question, and no evidence countermands that such purchases were no more than an exchange for property and therefore excepted from the definition of marital property pursuant to § 9-12-315(b)(2). Concerning appellant's claim to an interest in appellee's stock portfolio (which he concedes is nonmarital), the evidence is far from clear that any increase in values occurred. While appellant claims the portfolio had an initial value of approximately $175,000.00 when appellee inherited the stocks, the appellee argues her account was initially worth $313,936.00, but had decreased to $300,000.00 at the time of trial. In reviewing the record with the accounts and probate petitions and matters attached, we find it impossible to conclude with any certainty regarding when the appellee's inherited stocks

gained their way into her stock portfolio. We conclude, as did the court of appeals on this point, that there is evidence which clearly supports the chancellor's failure to find this issue in appellant's favor.

Finally, appellant argues the chancellor erred in failing to state reasons for not making an equal distribution of certain personal property as is required under Ark. Code Ann. § 9-12-315. The personal property items to which appellant makes reference were listed on two sheets, only one of which has been abstracted. Without both sheets, we are unable to determine how or to whom all of the items were divided. Suffice it to say, a conflict exists between the parties as to the worth of the items each received, and based upon the record, we are unable to say the chancellor was clearly wrong.

For the above reasons, we affirm the trial court's decision except we reverse that part of its holding concerning the house and property and remand with directions to award appellant an interest in such property in the sum of $7,950.00.

HOLT, C.J., and NEWBERN, J., concur. PURTLE, J., dissents.

DAVID NEWBERN, Justice, concurring. The majority opinion reaches the correct result, however, I find the discussion about tenancies by the entireties to be unnecessary and confusing. When funds owned by one spouse are deposited in a bank account held jointly with the other spouse, there is a strong presumption that the spouse who makes the deposit has transferred an interest in the funds to the other spouse by gift. *Ramsey v. Ramsey*, 259 Ark. 16, 531 S.W.2d 28 (1975). The presumption may be overcome by "clear, positive, unequivocal, unmistakable, strong, and convincing evidence" as Justice Fogleman wrote in the *Ramsey* case and as the majority opinion states here. We need only say that there was evidence of that type before the chancellor. As the presumption of gift was overcome, Donald Jackson owned no part of the money Emily Joy Jackson used to purchase the sister's interest in the house. That interest fell within the "acquired in exchange" exception to marital property. Ark. Code Ann. § 9-12-315(b)(2).

HOLT, C.J., joins this opinion.

JOHN I. PURTLE, Justice, dissenting. I cannot "trip it . . .

[o]n the light fantastic toe" so spryly as the majority. Neither can I turn to *Day* v. *Day* as a cure-all for every marital property question. As for me, I must turn to the law as written.

Ark. Code Ann. § 9-12-315(b) (1987) states:

(b) For the purpose of this section "marital property" means all property acquired by either spouse subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of divorce from bed and board;

(4) Property excluded by valid agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage.

In the present case the funds in the joint bank account were obviously acquired subsequent to the marriage. Moreover, the bank account does not fit into any of the five categories excepted from the basic rule.

It seems to me that the exact issue before us at this time was considered by the Court of Appeals in *Lofton* v. *Lofton*, 23 Ark. App. 203, 745 S.W.2d 635 (1988), where it was stated:

[O]nce property, whether personal or real, is placed in the names of persons who are husband and wife, without specifying the manner in which they take, there is a presumption that they own the property as tenants by the entirety and it takes clear and convincing evidence to overcome that presumption.

Apparently we are going to have two types of property involving joint bank accounts held by a husband and wife. One rule will apply to the Loftons and another to the Jacksons. We will thereafter have problems deciding whether it is a Lofton case or a

Jackson case.

Lofton had acquired property by inheritance from his parents. He bought his brother's half interest in the property. The purchased property was held to be marital property. In the present case the appellee inherited property from her parents. Subsequently she placed some of these funds in a joint account with her husband. These funds were in turn used to purchase the sister's half interest in the inherited residence. I can find no distinction in the facts of the two cases.

The appellee does not offer to refund to the appellant the amount of money which he had deposited in their account. The $31,000 he received was from the sale of property he owned prior to the marriage. If the chancellor felt a duty to trace the appellee's money from her separate funds through the joint checking account, he should have also felt the duty to trace the appellant's separate funds through the checking account. Either the appellant should be given credit for the $31,000 of non-marital funds he deposited in the account, or the appellee should not be given credit for the funds which she "ran through their checking account" to purchase the sister's interest in the house.

We should either accept the "source-of-funds" theory and "tracing" as recognized in *Potter* v. *Potter*, 280 Ark. 38, 655 S.W.2d 382 (1983), or reject it. We should not continue to trip the light fantastic through the law.