Thomas John FARRELL *v.* Olivia FARRELL

05-433                                                    231 S.W.3d 619

Supreme Court of Arkansas
Opinion delivered March 9, 2006

*Mitchell, Blackstock, Barnes, Wagoner, Ivers & Sneddon, PLLC,* by: *Jack Wagoner, III,* for appellant.

*Rose Law Firm, a Professional Association,* by: *Richard T. Donovan,* for appellee.

DONALD L. CORBIN, Justice. Appellant Thomas John Farrell appeals from the divorce decree and judgment entered by the Pulaski County Circuit Court as it relates to the distribution of property. On appeal, he raises three arguments for reversal: the trial court erred in (1) classifying the shares of ARC Project, Inc. (ARC) stock as non-marital; (2) dividing the marital property unequally; and (3) valuing the ARC stock. Appellee Olivia Farrell cross-appeals, asserting that the trial court erred when it held the increase in value of

the ARC stock was marital property, and further when it held the entire increase in the value of the ARC stock was marital property. As this appeal concerns issues of statutory interpretation and requires clarification of the law, our jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(a)(1) and (b)(5). We find no error and affirm.

The Farrells married on July 30, 1983. Prior to the marriage, Ms. Farrell obtained stock in the Arkansas Writer's Project, Inc.[1] In 1978, she obtained her first 200 shares of Class A stock. In 1982, for $25,000.00, she purchased all of Keith Weinstein's, the former advertising manager, shares which equaled one-half of the voting stock and one-third of the outstanding company stock. Ms. Farrell had borrowed the $25,000.00 from her grandparents to purchase the stock. The loan was paid back over a period of years, primarily after the Farrells were married. In addition, part of the loan was repaid with marital funds.

At the time of the divorce proceedings, Ms. Farrell owned 5,775 shares of ARC stock. The primary issue in the divorce was whether this stock was a marital or non-marital asset, and how to divide the stock once that determination was made. The trial court determined that the ARC stock was purchased prior to the marriage, and as such was non-marital property. However, the trial court found that the increase in value of the ARC stock was a marital asset because Ms. Farrell spent a substantial amount of time during the marriage working to increase the value of the company, and consequently the value of the stock. The court noted that Ms. Farrell was not alone in her efforts to increase the value, but determined that her efforts attributed greatly to the increase.

Furthermore, the trial court concluded that the fair-market value of the ARC stock when the Farrells married was zero, but that, at the time of the trial, the stock was valued at $144.18 per share, or $832,639.50. The court then determined that an unequal distribution was equitable based upon the factors set forth in Ark. Code Ann. § 9-12-315 (Repl. 2002), as well as the fact that the initial $25,000.00 for the purchase of the ARC stock was repaid with marital funds. As such, the trial court awarded $174,854.29,

---

[1] The Arkansas Writer's Project, which is now known as ARC Project, Inc. (ARC), is a holding company whose subsidiaries are Arkansas Times Limited Partnership (Arkansas Times) and Arkansas Business Limited Partnership (Arkansas Business).

or twenty-one percent, to Mr. Farrell and the remainder to Ms. Farrell.[2] This appeal followed.

On appeal, divorce cases are reviewed de novo. *Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001); *Box v. Box*, 312 Ark. 550, 851 S.W.2d 437 (1993). With respect to the division of property, we review the trial court's findings of fact and affirm them unless they are clearly erroneous, or against the preponderance of the evidence; the division of property itself is also reviewed and the same standard applies. *Id.*; *Bagwell v. Bagwell*, 282 Ark. 403, 668 S.W.2d 949 (1984). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Skokos*, 344 Ark. 420, 40 S.W.3d 768; *Huffman v. Fisher*, 343 Ark. 737, 38 S.W.3d 327 (2001). In order to demonstrate that the trial court's ruling was erroneous, the appellant must show that the trial court abused its discretion by making a decision that was arbitrary or groundless. *Skokos*, 344 Ark. 420, 40 S.W.3d 768; *Webber v. Webber*, 331 Ark. 395, 962 S.W.2d 345 (1998). We give due deference to the chancellor's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999).

As this case also deals with the interpretation of section 9-12-315, we will apply our standard of review for cases involving issues of statutory interpretation. We review issues of statutory construction de novo, as it is for this court to decide what a statute means. *Rose v. Arkansas State Plant Board*, 363 Ark. 281, 213 S.W.3d 607 (2005); *Cave City Nursing Home, Inc. v. Arkansas Dep't of Human Servs.*, 351 Ark. 13, 89 S.W.3d 884 (2002). This court is not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Rose*, 363 Ark. 281, 213 S.W.3d 607. When reviewing issues of statutory interpretation, we keep in mind that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.*; *Cave City*, 351 Ark. 13, 89 S.W.3d 884. When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or

---

[2] The distribution of the parties' other assets is not at issue in this appeal.

doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.* When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Id.* This court is very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.* With this in mind, we now turn to the present case.

## DIRECT APPEAL

### I. ARC Stock — Marital or Non-Marital Asset

For his first point of appeal, Mr. Farrell claims that the trial court erred in finding that the ARC stock was a non-marital asset. Specifically, he argues that the shares of stock are marital property under the "source of funds" rule adopted by this court in *Jackson v. Jackson*, 298 Ark. 60, 765 S.W.2d 561 (1989). While he maintains that the stock is marital property under the "source of funds" rule adopted in *Jackson*, much of his argument is based upon the treatise *Equitable Distribution of Property* and its commentary on Arkansas law. *See* Brett R. Turner, *Equitable Distribution of Property* (2d ed. 1994 & Supp. 2003). Mr. Farrell asserts that while Arkansas law claims to follow the "source of funds" rule, our case law cannot be squared with this rule. Furthermore, he argues that the marital status of an asset under section 9-12-315(b) turns upon when an asset is acquired, and pursuant to the "source of funds" rule, property is acquired when real value has been created. Thus, he concludes that, under the "source of funds" rule, the property was marital because it was repaid with marital funds.[3]

Section 9-12-315(b)(1) provides that "marital property" is all property acquired by either spouse subsequent to the marriage except:

> Property acquired prior to marriage or by gift or by reason of the death of another, including, but not limited to, life insurance proceeds, payments made under a deferred compensation plan, or

---

[3] Mr. Farrell also makes an argument that since the ARC stock was marital under the "source of funds" rule, there was no basis for an "active appreciation" analysis. As we find no error in the trial court's finding that the ARC stock was non-marital, this argument is not applicable to Mr. Farrell's first point of appeal.

an individual retirement account, and property acquired by right of survivorship, by a trust distribution, by bequest or inheritance, or by a payable on death or a transfer on death arrangement[.]

Based upon section 9-12-315(b)(1), it is clear that property acquired prior to marriage is non-marital property. We have explained that the property's status "does not depend upon when the property is received, but rather depends upon when the right of the property is acquired." *McDermott v. McDermott*, 336 Ark. 557, 560, 986 S.W.2d 843, 844 (1999). *See also Bunt v. Bunt*, 294 Ark. 507, 744 S.W.2d 718 (1988). Thus, to the extent that either spouse acquires an enforceable right during the marriage, they acquire marital property. *Id.*

In this case, the trial court found that the ARC stock was not a marital asset. Mr. Farrell correctly points out that the marital status of an asset under section 9-12-315(b) turns upon when an asset is acquired. He claims that, pursuant to the "source of funds" rule, property is acquired when and to the extent that its real value has been created. Therefore, he argues, property becomes marital property if its real value was a product of the marital partnership. Mr. Farrell maintains that this rule requires the finding that the ARC stock was marital, even though it was acquired prior to marriage, because it did not obtain its real value until after the loan used to acquire the stock had been paid off with marital funds. Specifically, he claims that under the "source of funds" rule, the property is marital because the funds used to pay off the loan were marital. This argument is flawed.

Ms. Farrell acquired all of the ARC stock before marrying Mr. Farrell in 1983. She obtained the first 200 shares of Class A stock in 1978. In 1982, using a $25,000.00 loan from her grandparents, Ms. Farrell purchased all of the Weinstein shares. Thus, by June of 1982, Ms. Farrell had acquired a right in all shares of ARC stock presently at issue. Because Mr. and Ms. Farrell did not marry until July of 1983, it is clear that Ms. Farrell acquired an enforceable right in the stock prior to the marriage. Accordingly, under section 9-12-315(b) and the "source of funds" rule, the ARC stock is non-marital property.

Furthermore, the ARC stock did not change into marital property by virtue of the fact that marital funds were used to pay off the loan used to acquire the stock. In *Box*, 312 Ark. 550, 851 S.W.2d 437, we affirmed the chancellor's order that the appellee remain the sole owner of property acquired before the

marriage. Although we went on to discuss that the chancellor erred in failing to consider that marital property had been used to pay some of the debt against the non-marital assets in distributing the property, we did not find that the court erred in finding that the property was non-marital. As such, it follows that the ARC stock at issue here cannot change into marital property merely because the $25,000.00 loan used to pay for the stock was paid back with marital funds. Thus, the trial court did not abuse its discretion in finding that the ARC stock was a non-marital asset.

Additionally, we take this opportunity to address Mr. Farrell's arguments that our case law since *Jackson*, 298 Ark. 60, 765 S.W.2d 561, has been inconsistent with the "source of funds" rule. There, we reiterated our holding in *Canady v. Canady*, 290 Ark. 551, 721 S.W.2d 650 (1986), that "while the tracing of nonmarital money or property into other forms may be an important tool, or means to an end, we cautioned that tracing is not intended to be an end in itself." 298 Ark. at 65, 765 S.W.2d at 563. In *Jackson*, we were dealing with property that was acquired during marriage with non-marital property, and we applied the "source of funds" rule to find that we could trace the funds used to purchase property directly to the appellee's non-marital stock. As such, we affirmed the trial court's finding that the stock was non-marital property. Since *Jackson*, we have followed the "source of funds" rule, in conjunction with section 9-12-315(b)(1), when dealing with this issue. *See Box*, 312 Ark. 550, 851 S.W.2d 437 (holding that the preponderance of the evidence supports the trial court's finding that as the appellee owned the properties at issue prior to the marriage and that, under section 9-12-315(b)(1), the appellee should remain the sole owner of the properties). As such, we find no merit to Mr. Farrell's argument that our case law is inconsistent.

## II. Unequal Division of Marital Property

For his second argument, Mr. Farrell claims that the trial court erred in making an unequal division of the ARC stock. Specifically, he argues that because the ARC stock was marital property under the "source of funds" rule, the trial judge based his unequal division of the marital property on an inapplicable "active appreciation" theory. This argument has no merit.

Section 9-12-315(a) requires that all marital property be distributed equally to both parties and that all non-marital property be returned to the party who owned it prior to marriage, *unless* the

trial court finds this division to be inequitable. In the event that the trial court reaches that conclusion, it is allowed, after considering specific factors, to make any division of the property that it deems equitable. These factors are: (1) the length of the marriage; (2) age, health, and station in life of the parties; (3) occupation of the parties; (4) amount and sources of income; (5) vocational skills; (6) employability; (7) estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; (8) contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a home-maker; (9) the federal income tax consequences of the court's division of property. *See* section 9-12-315(a)(1)(A)(i)-(ix).

We have consistently interpreted section 9-12-315(a) to grant the trial court broad powers in distributing both non-marital and marital property to achieve an equitable division. *Box*, 312 Ark. 550, 851 S.W.2d 437; *Canady*, 290 Ark. 551, 721 S.W.2d 650; *Williford v. Williford*, 280 Ark. 71, 655 S.W.2d 398 (1983). In *Box*, 312 Ark. at 556-557, 851 S.W.2d at 441, we held that "[a]lthough section 9-12-315(b)(5) classifies an increase in value of non-marital property as non-marital property, it is appropriate for a chancellor to consider the non-owning spouse's contributions toward the increase in value when dividing the property." Additionally, in *Bagwell*, 282 Ark. 403, 668 S.W.2d 949, we explained that a trial court may find that a non-owning spouse is entitled to some benefit by reason of marital funds having been used to pay off debts on the owning spouse's non-marital property. *See also Williford*, 280 Ark. 71, 655 S.W.2d 398 (holding that a non-owning spouse is entitled to some benefit when marital funds are used to purchase a home built on the owning spouse's non-marital lot).

In this case, the trial court found that the ARC stock was non-marital property but that the increase in its value was marital property.[4] Moreover, the $25,000.00 loan obtained by Ms. Farrell to purchase the stock was paid off using marital funds. As such, it was proper for the trial court to consider this, and the other factors enumerated in section 9-12-315(a)(1)(A), in determining an equitable distribution of the increase in value of the ARC stock.

---

[4] In her cross-appeal, Ms. Farrell argues that the trial court erred in finding that the increase in the value of ARC stock was a marital asset. For the purposes of the division of property, the status of the asset, marital or non-marital, does not change our analysis.

Ultimately, the court made an equitable division of the value of the ARC stock, awarding Mr. Farrell $174,854.29, or twenty-one percent of the value of the stock. In making this award, the trial court found that the ARC stock had little or no value when it was purchased, but found that the value of the stock, as of the date of the divorce, was $832,639.50. It then determined, based upon the nine factors contained in section 9-12-315(a)(1)(A), that it was equitable and fair that there be an unequal division of the increase in value of the stock. Specifically, the trial court considered the following facts: (1) Mr. and Ms. Farrell were married in 1983 and during the marriage both parties used marital funds and their time and effort to develop both of their businesses; (2) both parties are in good health and are relatively young; (3) both parties enjoy a comfortable station in life and have occupations that will allow adequate income for each to live comfortably in the future; (4) both parties have skills suitable for future employment with the ability of each for further acquisition of capital assets and income; (5) that the initial $25,000.00 for the purchase of the ARC stock was paid from marital funds subsequent to the parties' marriage. The trial court noted that it also considered the fact that the increase in the value of the stock was not totally attributable to the efforts of Ms. Farrell, as many other talented individuals contributed to the success of the Arkansas Times and Arkansas Business. In sum, the trial court did not abuse its discretion in examining the factors set forth in section 9-12-315(a)(1)(A), nor in determining that the equitable division of the property required an unequal distribution of the increase in value of the ARC stock.

### III. Valuation of ARC Stock

Mr. Farrell's last argument on appeal is that the trial court erred in its valuation of the ARC stock. While he divides his argument into two parts, that the trial court erred in applying a minority discount to the ARC stock and in disregarding both experts' valuations of the stock and accepting the valuation advanced by Ms. Farrell, it is unnecessary to separately review the trial court's valuation of the ARC stock in this manner.

Here, the trial court stated that substantial evidence was presented as to the value of the stock by both parties' experts as well as by testimony of the principals of Arkansas Business and Arkansas Times. After evaluating this testimony, the trial court

found that there was a purchase of stock on October 8, 2002, where the price per share was $144.18. This sale of stock included a minority discount, but the trial court noted that there were other offers and sales of ARC stock using this price. The trial judge found that the value of the stock as of the date of the divorce was $832,639.50, based upon his determination that Ms. Farrell's 5,775 shares should be valued at $144.18 per share. The trial court explained that a minority discount was appropriate, even though Ms. Farrell presently has control of a majority of the voting stock of ARC, because the value of the shares can best be established by the past actual sales of the stock. Given the deference this court accords to the trial court's superior position to judge the credibility of witnesses, we cannot say that the trial court abused its discretion in finding the testimony as to the recent stock sale price to be worthy of greater weight.

## CROSS-APPEAL

### I. Increase in Value of ARC Stock — Marital or Non-Marital Asset

On cross-appeal, Ms. Farrell argues that the trial court erred when it held the increase in value of the ARC stock was marital property. Specifically, she claims that the increase in value of property acquired before marriage remains non-marital pursuant to section 9-12-315(b) and this court's decision in *Box*, 312 Ark. 550, 851 S.W.2d 437. Mr. Farrell, on the other hand, argues that Ms. Farrell's conclusion is incorrect because active appreciation in separate property must be part of the marital estate, as held in *Layman v. Layman*, 292 Ark. 539, 731 S.W.2d 771 (1987), *Davis v. Davis*, 79 Ark. App. 178, 84 S.W.3d 447 (2002), and *Smith v. Smith*, 32 Ark. App. 175, 798 S.W.2d 443 (1990).

Section 9-12-315(b)(5) provides that the increase in value of property acquired before marriage is not marital property. In *Box*, we reiterated that this section "classifies an increase in value of non-marital property as non-marital property[.]" 312 Ark. at 556, 851 S.W.2d at 441. *See also Smith*, 32 Ark. App. 175, 181-182, 798 S.W.2d 442, 446 (holding that "this code section provides that the increase in value of property acquired prior to the marriage remains that party's sole and separate property"). Moreover, in *Layman*, 292 Ark. at 543, 731 S.W.2d at 774, we held that "when one spouse makes significant contributions of time, effort and skill which are directly attributable to the increase in value of nonmarital property, . . . the presumption arises that such increase belongs

to the marital estate." There, we were faced with the issue of an increase in value of non-marital property acquired subsequent to marriage and whether that increase could be considered marital property. Applying an active appreciation analysis, we explained that the increase in value of the non-marital property, the gift of stock, was attributable in part to the time, effort, and skill of Mr. Layman and, because those endeavors belonged to the marital estate, Mrs. Layman was entitled to share in the fruits of such effort. *See also Davis*, 79 Ark. App. 178, 184-185, 84 S.W.3d 447, 451 (relying on our holding in *Layman* that "marital property does not include passive appreciation of nonmarital property but that active appreciation of such property as a result of a spouse's contribution of substantial time, effort, or skill over an extended period of time should be classified as marital property).

In this case, we are faced with the increase in the value of property acquired prior to marriage. As such, the plain meaning of section 9-12-315(b)(5) dictates that the increase of value of the ARC stock would be non-marital. However, *Layman, Davis*, and *Smith*, are applicable because Ms. Farrell's time and efforts significantly contributed to the increase in value of the stock. While the trial court noted that Ms. Farrell was not alone in the effort to increase the value, it correctly concluded that the increase in value of the non-marital stock was due in large part to Ms. Farrell's efforts. As we follow an "active appreciation" analysis in determining if one spouse's efforts significantly contributed to the increase in the value of non-marital assets, we cannot say that the trial court erred in finding that the increase in value was a marital asset.

## II. *Entire Increase in Value of ARC Stock*

For her second point of cross-appeal, Ms. Farrell argues that, in any event, the trial court erred when it held the entire increase in value of the ARC stock to be marital property. To support this conclusion, Ms. Farrell relies on her expert's analysis of all principal ARC employees' efforts, which found Ms. Farrell to be twenty percent responsible for the increase in value. Therefore, Ms. Farrell argues, the most Mr. Farrell should have received is ten percent of the increased value.

Mr. Farrell, on the other hand, argues that once he demonstrated that some of the increase in value of the ARC stock during the marriage was due to Ms. Farrell's efforts, the burden shifted to

her to demonstrate the portion of the increase attributable to passive versus active appreciation. He maintains that she has not met this burden, and as such the trial court was correct in finding that the entire increase was a marital asset.

Although there is no Arkansas law on this issue, other equitable-distribution jurisdictions have examined this issue. The majority of those jurisdictions apply the following analysis. A spouse seeking to have an increase in value of non-marital property declared marital has the burden of proving marital contributions and an increase in value. However, once this burden is met, the owning spouse is required to prove that the marital contributions did not cause the increase in value. *See MacDonald v. MacDonald*, 532 A.2d 1046 (Me. 1987); *Travis v. Travis*, 59 S.W.3d 904 (Ky. 2001); *Young v. Young*, 606 So.2d 1267 (Fla. Dist. Ct. App. 1992). Moreover, this standard is commonly applied in situations where the increase in value is of a non-marital business interest. *Fountain v. Fountain*, 148 N.C. App. 329, 559 S.E.2d 25 (2002); *Berenberg v. Berenberg*, 474 N.W.2d 843 (Minn. Ct. App. 1991).

Here, Mr. Farrell presented evidence as to Ms. Farrell's significant and time-consuming efforts towards increasing the value of ARC stock. In response, Ms. Farrell presented evidence that she was only twenty percent responsible for the increase in value. Specifically, Mr. Farrell testified that Ms. Farrell was always working and that he, along with the nanny, primarily tended to the children and the home. Ms. Farrell presented testimony from other ARC employees about the extent of their work for the business. Furthermore, she personally testified that the increase in the value of her stock was attributable to other people and that she was not solely responsible for that increase. After reviewing all the testimony, the trial court concluded that the increase in value of the stock was not totally attributable to Ms. Farrell's efforts, as many other talented individuals contributed to the success of the business. However, it also found that the value of the ARC stock had appreciated subsequent to the marriage because of the time, effort, and skill of Ms. Farrell. As such, it concluded that it was difficult to determine just how much of Ms. Farrell's efforts added to the value and how much were due to others' efforts. After weighing this evidence, the trial court found that the entire increase in value of the non-marital stock was a marital asset. As the trial court had the benefit of observing the witnesses and because we defer to its determination regarding the weight to be given to such testimony,

we cannot say that the trial court abused its discretion in reaching this conclusion.

Affirmed on direct appeal; affirmed on cross-appeal.

BROWN, J., not participating.