PHILLIP T. WHITEAKER, Judge
Craig Martens appeals a White County Circuit Court order denying his request for automatic termination of alimony payments upon the remarriage of his ex-wife Melanie Martens (now Blasingame). For the reasons set forth in this opinion, we affirm.
Martens and Blasingame were married in May 1996 and divorced in January 2015. The parties agreed on several issues, which were set forth in the divorce decree. They agreed on child custody, visitation, and child support. They also agreed on property division; specifically, Blasingame was awarded sole ownership of the parties' GMC Acadia and agreed to indemnify, defend, and hold Martens harmless from any and all indebtedness owed on the vehicle. Additionally, they agreed on alimony, and the decree awarded Blasingame "alimony" in the amount of $702.34 for 48 consecutive months-the exact amount and duration of the car payments on the Acadia.
After the decree was entered, Martens made only two spousal-support payments. Martens unilaterally ceased his alimony payments, believing Blasingame had begun cohabitating with her boyfriend in March 2015. In May 2015, Blasingame remarried. On December 15, 2016, the Office of Child Support Enforcement notified Martens that it would begin withholding past-due and future claims for child and spousal support from his wages.[1] As a result, Martens filed a motion to clarify the divorce decree relating to alimony. Citing Arkansas Code Annotated section 9-12-312, Martens argued that he no longer owed spousal support because his liability for alimony automatically ceased in March 2015 upon Blasingame's cohabitation, or at the very latest, in May 2015 when Blasingame remarried.
The court held a hearing on the motion to clarify. At the hearing, both Martens and Blasingame testified to the nature of the alimony award within the decree. Blasingame testified that the parties had entered into an agreement that Martens would pay her $702.34 for 48 consecutive months in periodic alimony, representing the remaining balance of car payments on the GMC Acadia that she had been awarded. Martens agreed that the amount of spousal support was calculated based on the car payment, but that it was designated as "alimony" so that he could deduct it from his taxes and so that it would automatically terminate if Blasingame remarried. Since Blasingame had remarried, Martens took the position that his obligation to pay alimony terminated by operation of law. Blasingame acknowledged that the law terminates alimony upon remarriage *494 of the receiving spouse, unless otherwise ordered. However, she understood that, because the "alimony" was calculated based on the remaining balance on the automobile loan, Martens was still required to make the payments under their agreement. Martens admitted that he was unaware that spousal support could continue after remarriage if the parties agreed.
After hearing the testimony and arguments of counsel, the trial court held that, although designated as alimony, the $702.34 was in actuality a payment pursuant to a property-settlement agreement reached by the parties. In so finding, the court noted that the "alimony" payments were derived from the amount owed on the vehicle. It also noted that the way the other property was divided in the divorce, along with Blasingame's apparent lack of need at the time, further militated toward a finding of property settlement over alimony. As a result, the trial court refused to find that the payments were terminated upon Blasingame's remarriage. Martens appeals.
In reviewing domestic-relations cases, we perform a de novo review. Taylor v. Taylor , 369 Ark. 31, 250 S.W.3d 232 (2007) ; Farrell v. Farrell , 365 Ark. 465, 231 S.W.3d 619 (2006). We will not reverse the trial court's finding of fact unless it is clearly erroneous. Id. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. Id.
Martens contends that the trial court erred in characterizing the "alimony" payments in the divorce decree as a property-division settlement. We agree that the trial court erred in finding that the "alimony" payments in the decree were provisions of a property-settlement agreement and not, in actuality, alimony payments. The clear and unambiguous language of the decree designates the payments as alimony. Both parties admitted at the hearing that they had agreed that the payments were to be considered alimony. Thus, the payments set forth in the divorce decree were, in fact, alimony payments.
Next, Martens argues that the court erred in concluding that the alimony payments were nonmodifiable and in denying his request for termination of alimony by operation of law. We disagree.
Martens bases his argument on the application of Arkansas Code Annotated section 9-12-312(a)(2) :
Unless otherwise ordered by the court or agreed to by the parties , the liability for alimony shall automatically cease upon the earlier of:
(A) The date of the remarriage of the person who was awarded the alimony;
....
(D) The living full time with another person in an intimate, cohabitating relationship.
Ark. Code Ann. § 9-12-312(a)(2)(A), (D) (Repl. 2015) (emphasis added). Under our de novo review, we find that the parties reached an independent agreement for the payment of alimony; thus, removing it from the automatic-cessation requirements of the law.
The Arkansas Supreme Court has distinguished the two major types of agreements for the payment of alimony. In Seaton v. Seaton , 221 Ark. 778, 255 S.W.2d 954 (1953), the court stated:
Our decisions have recognized two different types of agreement for the payment of alimony. One is an independent contract, usually in writing, by which the husband, in contemplation of the divorce, binds himself to pay a fixed amount or fixed installments for his wife's support. Even though such a contract is approved by the chancellor and *495 incorporated in the decree, as in the Bachus [v. Bachus , 216 Ark. 802, 227 S.W.2d 439] case, it does not merge into the court's award of alimony, and consequently, as we pointed out in that opinion, the wife has a remedy at law on the contract in the event the chancellor has reason not to enforce his decretal award by contempt proceedings.
The second type of agreement is that by which the parties, without making a contract that is meant to confer upon the wife an independent cause of action, merely agree upon "the amount the court by its decree should fix as alimony." ... A contract of the latter character is usually less formal than an independent property settlement; it may be intended merely as a means of dispensing with the proof upon an issue not in dispute, and by its nature it merges in the divorce decree.
Id. at 780, 255 S.W.2d at 955-56. (internal citations omitted). The agreement need not be in writing to be considered a binding, independent contract of the first type. See Linehan v. Linehan , 8 Ark. App. 177, 649 S.W.2d 837 (1983).
Here, both parties admitted to an agreement regarding the payment of alimony.[2] They both admitted that the alimony payments were designed to cover the remaining balance of the automobile loan covering the GMC Acadia. They further agreed to alimony payments of a designated sum for a designated period of time. In Artman v. Hoy , 370 Ark. 131, 257 S.W.3d 864 (2007), our supreme court held that section 9-12-312, which provides for the automatic termination of alimony when the receiving spouse remarries or cohabitates, does not apply to an agreement for the payment of alimony over a term of years, even when the decree does not specifically address the effect of remarriage or cohabitation on the alimony obligation. Instead, when the parties agree to alimony for a designated period of time, it follows that there has been an agreement as contemplated by section 9-12-312(a), such that the automatic-termination provision regarding remarriage or cohabitation is not applicable. Id.
Because we can affirm the trial court when it reaches the right result, even though it may have announced the wrong reason, Delgado v. Delgado , 2012 Ark. App. 100, 389 S.W.3d 52, we hereby affirm the trial court's decision to deny Martens's request for termination of his alimony payments.
Affirmed.
Gladwin and Brown, JJ., agree.

Martens does not challenge the trial court's ruling on child support, and it is not discussed here.

Martens admitted that, before the decree was entered, the parties informed the court that a settlement had been reached; that he confirmed to the court that he was agreeing to the alimony payments as indicated; that the agreement was read into the record; and that he signed the divorce decree.