**John K. KELLY, Appellant,**

v.

**Christian Snowden KELLY, Appellee.**

**No. 10–60.**

Supreme Court of Arkansas.

June 16, 2011.

Perroni & Koehler, Little Rock, by: Samuel A. Perroni and Shelly Hogan Koehler, for appellant.

Cullen & Co., PLLC, Little Rock, by: Tim Cullen; and Shemin Law Firm, PLLC, Fayetteville, by: Kenneth R. Shemin, for appellee.

PAUL E. DANIELSON, Justice.

Appellant John K. Kelly appeals from the divorce decree granting appellee Christian Snowden Kelly ("Christy") a divorce. He asserts two points on appeal: (1) that the circuit court erred in finding that certain stock was nonmarital property; and (2) that the circuit court erred in finding him liable for one-half of the deficiency resulting from the sale of the marital home. We reverse and remand.

The facts, in brief, are these. John and Christy were married on November 27, 1982, and had one minor child born of the marriage.[1] On January 10, 2006, Christy filed for divorce, alleging general indignities. John answered and counterclaimed, also alleging the grounds of general indignities and seeking spousal support. On May 10, 2007, a hearing was held, during which the circuit court heard testimony regarding Christy's interest in Tarco Roofing Materials ("TRM"), a separate entity from Tarco, Inc., and Tarco of Texas, both of which were owned by Christy's family. When TRM was created, the stock was distributed to both Christy and her brother, David Snowden, Jr., as the sole shareholders. The issue at the hearing was whether Christy's stock interest in TRM was marital or nonmarital property. In a letter opinion, dated July 30, 2007, the circuit court found that the stock was a gifted interest to Christy from her father, David Snowden, Sr., and stated in pertinent part, that

[a]n inter vivos gift requires that the donor be of sound mind; that there was an actual delivery of the property; that the donor clearly intended to make an immediate, present and final gift; that the donor unconditionally released all future dominion and control over the property; and that the donee accepted the gift. *Wright v. Union National Bank*, 307 Ark. 301, 819 S.W.2d 698 (1991). Each of these elements is present in this case. In fact, by the time that the Plaintiff and Snowden Jr., incorporated TRM, in exactly the manner directed by the gifting plan and direction of their father, each of these elements had been accomplished.

The Plaintiff also points out in her argument that Arkansas recognizes that

---

1. A second child is mentioned in the record, but it appears that child had reached majority age at the time the divorce complaint was filed.

property can be an interest, present or future, legal or equitable, vested or contingent in real or personal property including income and earnings in the context of a matrimonial relationship. ACA § 9–11–401. Snowden Sr. possessed the original legal and equitable property interest in the concept and plans that became a business that was subsequently gifted to the Plaintiff and Snowden, Jr., who in turn, incorporated this gift as Tarco Roofing Materials, Inc.

The Defendant focuses upon the issuance of the original stock in TRM. His position is that because this stock was issued to the Plaintiff during the parties' marriage, and because the stock did not transfer directly from the name of Snowden, Sr., that the company could not be the subject of a valid gift. Therefore, he argues that the Plaintiff's interest should be declared marital property. The Court disagrees. This argument reaches a result, not only inconsistent with the obvious intent of the alleged donor, Snowden, Sr., but also inconsistent with the intent of ACA § 9–12–315(b)(1). The form over substance approach is not appropriate when viewed in the factual context of this donor's involvement in creating and gifting this business.

The Defendant argues that the Plaintiff and her brother independently acquired their respective interests in TRM by only the initial issuance of the company's stock. However, this restricted approach disregards the property's origin immediately before it was transferred to the Plaintiff. Consideration must be given to the factual ₃background and the entire context involved in Snowden Sr.'s creation of the business concept that became TRM, plus how he actually planned and directed the initial stock issuance. It is clear from the testimony that the ownership interest in this company that flowed to the Plaintiff was a gift from her father.

The uncontroverted testimony was that the concept for TRM and the location for the company originated with Snowden Sr. Snowden Sr. initiated the physical plans for the company, along with the internal strategy for integrating the company with his other Tarco entities. Snowden Sr. assigned Snowden Jr. the task of working with the Pennsylvania authorities, legal counsel, financial advisors and others in order to create TRM. Snowden Sr. even included the outline for creating this asset in his total estate planning strategy as both this strategy and the company were developed by his attorney, himself, and his CPA. Snowden Sr. intended to personally own TRM if the Plaintiff and her brother did not want to accept the gift of ownership. Snowden Sr. provided the very crucial and necessary financial underpinnings and guarantees required to take the company beyond a proposed concept and actually bring the physical facility "out of the ground" to become a functioning reality. Snowden Sr. provided the initial working capital, key management, employees, together with a customer base and the Tarco name, all of which were essential to create TRM and for its subsequent successful operation. This identity alone was a major component of the overall gift of the company. And, very important, the undisputed testimony was that Snowden Sr. directed and ordered the total initial shares of TRM stock be issued in the specific respective percentages, as he determined, to only the Plaintiff and Snowden Jr. He had the undisputed ownership, dominion and control of the company that became TRM until he voluntarily gifted these very elements of ownership, dominion, and control to his

children by expressly directing that the TRM shares be issued to them instead of himself.

The gift of Plaintiff's interest in TRM was culminated by the unambiguous, precise and express conduct of Snowden Sr. in directing that the ownership of TRM vest in the Plaintiff and her brother subsequent to his numerous undisputed actions, as detailed above. The Defendant's position of limiting the issue only to the initial formal stock issuance is too restricted and narrow in scope when considering the extensive factual context of this entire gifting procedure by Snowden Sr.

The Court holds that the Plaintiff's interest in TRM was obtained as a gift from her father. It is not controlling that the Plaintiff subsequently satisfied the "shareholder receivable" with her own non-marital funds. In effect she was funding a non-marital asset with non-marital funds.

Since TRM is a Pennsylvania corporation the issue of the significance of the phrase "fully paid" shares, as it appears in TRM's bylaws, should be determined by the applicable Pennsylvania law. The testimony and arguments offered by both parties on this issue was not sufficiently developed for a decision upon the term's relevance to the ⌊4issuance of TRM stock. However, it appears from the Court's finding that (1) the Plaintiff's ownership interest in TRM is a non-marital gifted interest and that (2) the infusion of funds by the Plaintiff into TRM's capitalization was accomplished with her non-marital monies, regardless of the timing, [and] renders moot the issue of when the shares were "fully paid" as argued by the parties.

Last, the Defendant asserts that the rationale in the decision in *Farrell v. Farrell*, 365 Ark. 465, 231 S.W.3d 619 (2006), is controlling in regard to his claim that the Plaintiff's interest in TRM is marital. It appears that *Farrell* is not directly applicable due to the Court's decision that the Plaintiff's interest in Tarco Roofing Materials, Inc., is a gifted interest from Snowden Sr.

A subsequent hearing was held on October 21, 2008, and on December 29, 2008, the circuit court issued another letter opinion in which it divided the property at issue between the parties. On April 9, 2009, another hearing was held, and on August 20, 2009, the circuit court entered the final divorce decree, incorporating its prior division of property from its letter opinion, and finding, pertinent to this appeal:

4. The testimony of Mr. David Snowden, Sr., Mr. David Snowden, Jr., and Christian Kelly, together with the Tarco financial exhibits (Plaintiff's exhibits 2, 3, 4, 5, 6, 7 and 8) clearly indicate that the $2,080,000.00 funding received by the Plaintiff from Tarco Roofing Materials, Inc. ("TRM") to finance the purchase of the parties' Edgehill residence was a loan. The relevant witnesses stated that the repayment schedule was flexible and that it was intended that future dividend disbursements would be applied to service the loan payments. There had been no payments at the time of the hearing and the loan had accrued interest on the amount owed. Both Snowdens testified that the tax consequences of providing this money as a gift were prohibitive and therefore the decision was to loan the funds for the home purchase. The exhibits corroborate the testimony. Therefore:

(a) The Edgehill residence shall be sold and the net proceeds from the sale, after payment of selling and closing costs, shall be applied first to the original $750,000.00 mortgage; then to the

marital loan debt owed to TRM in the principal amount of $2,080,000.00, plus interest accrued thereon according to the terms set forth in the promissory note and the other Tarco financial exhibits.

(b) Until such time as the Edgehill residence is sold, the parties are to share equally in the payment of the monthly mortgage payments and other reasonable and necessary expenses of maintaining and preserving the Edgehill residence (i.e. utilities, maintenance, repairs, etc.).

(c) The Plaintiff's request for reimbursement of mortgage payments she paid prior to the temporary hearing on October 5, 2006 is denied. This Court's letter opinion dated July 27, 2009 setting forth the basis for this ruling is attached hereto and incorporated herein by reference as Exhibit "A."

(d) The parties have agreed to list the Edgehill residence with [the] Janet Jones Company. The parties have further stipulated and agreed that the residence shall be listed for a period of six (6) months and in the event a contract for sale is not entered within the six (6) months, either party may petition the Court to have the residence sold via commissioner's sale. The Commissioner shall, after having advertised the time and place of sale for thirty (30) days by publication in a newspaper having a *bona fide* circulation in Pulaski County, Arkansas, by at least one insertion, sell the Edgehill residence at the courthouse steps of the Pulaski County Courthouse, at public auction to the highest bidder. The purchaser at such sale shall be required to give a letter of credit or surety bond approved by the Clerk and both parties' counsel sufficient to assure payment of the purchase price within forty-eight hours of the sale, and a lien shall be retained as additional security for the payment of such purchase price.

(e) Any balance remaining after the payment of the amounts specified herein above shall be divided equally between the parties. In the event there are insufficient funds from the sale of the Edgehill residence to pay the mortgage and the debt owed to TRM, both parties shall be equally liable for paying one-half of the balance owed on such marital debts and shall indemnify and hold the other harmless for his or her one-half of such marital debt obligations.

. . . .

7. The Plaintiff shall receive as her sole and separate non-marital property her stock interest in Tarco Roofing Materials, Inc. (TRM). This Court's letter opinion dated July 30, 2007 setting forth the basis for this award is attached hereto and incorporated herein by reference as Exhibit "B."

John filed a notice of appeal, and Christy filed a notice of cross-appeal, which she has since abandoned. John now appeals.

On appeal, divorce cases are reviewed de novo. *See Taylor v. Taylor,* 369 Ark. 31, 250 S.W.3d 232 (2007). With respect to the division of property, we review the circuit court's findings of fact and affirm them unless they are clearly erroneous, or against the preponderance of the evidence; the division of property itself is also reviewed, and the same standard applies. *See Conlee v. Conlee,* 370 Ark. 89, 257 S.W.3d 543 (2007). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *See id.* In order to demonstrate that the circuit court's ruling was erroneous, the appellant must show that the circuit court abused its discretion by making a decision that was arbitrary or groundless. *See id.* We give due defer-

ence to the circuit court's superior position to determine the credibility of witnesses and the weight to be given their testimony. *See id.*

■ For his first point on appeal, John argues that the circuit court erred in finding that Christy's stock interest in TRM was nonmarital property. He contends that the stock was not a gift from Christy's father because her father never owned the stock. He claims that a business "opportunity" cannot be a gift and that an enforceable right occurred when the stock was issued to Christy during the marriage and for consideration. Accordingly, he asserts that the stock was marital property acquired during the course of the marriage and did not satisfy any of the exceptions set forth by Arkansas Code Annotated § 9–12–315(b). We agree that the stock was marital property.

■ Marital property means all property acquired by either spouse subsequent to the marriage except:

(1) Property acquired prior to marriage or by gift or by reason of the death of another, including, but not limited to, life insurance proceeds, payments made under a deferred compensation plan, or an individual retirement account, and property acquired by right of survivorship, by a trust distribution, by bequest or inheritance, or by a payable on death or a transfer on death arrangement;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of divorce from bed and board;

(4) Property excluded by valid agreement of the parties;

(5) The increase in value of property acquired prior to marriage or by gift or by reason of the death of another, including, but not limited to, life insurance proceeds, payments made under a deferred compensation plan, or an individual retirement account, and property acquired by right of survivorship, by a trust distribution, by bequest or inheritance, or by a payable on death or a transfer on death arrangement, or in exchange therefor;

(6) Benefits received or to be received from a workers' compensation claim, personal injury claim, or social security claim when those benefits are for any degree of permanent disability or future medical expenses; and

(7) Income from property owned prior to the marriage or from property acquired by gift or by reason of the death of another, including, but not limited to, life insurance proceeds, payments made under a deferred compensation plan, or an individual retirement account, and property acquired by right of survivorship, by a trust distribution, by bequest or inheritance, or by a payable on death or a transfer on death arrangement, or in exchange therefor.

Ark.Code Ann. § 9–12–315(b) (Repl.2009). There is a presumption that all property acquired during a marriage is marital property. *See McDermott v. McDermott,* 336 Ark. 557, 986 S.W.2d 843 (1999).

■ Here, it is undisputed that Christy acquired her shares in TRM during the marriage, and the record reveals that Christy acquired the TRM stock after her father decided, for business reasons, to establish another business entity in the northeast. The stock for the new company was issued solely in the names of Christy and her brother, David, Jr., and the TRM books reflected a shareholder receivable from Christy for $22,500 and

$27,500 for David, Jr. We have explained that a property's status "does not depend upon when the property is received, but rather depends upon when the right of the property is acquired." *Farrell v. Farrell*, 365 Ark. 465, 471, 231 S.W.3d 619, 623 (2006) (quoting *McDermott*, 336 Ark. at 560, 986 S.W.2d at 844). Thus, to the extent that either spouse acquires an enforceable right during the marriage, they acquire marital property. *See id.*

The record before us makes clear that Christy acquired an enforceable right when she acquired her shares of TRM stock during her marriage; therefore, the stock is marital property unless it falls within one of the exceptions set forth in section 9–12–315(b). *See Jackson v. Jackson*, 298 Ark. 60, 765 S.W.2d 561 (1989). Christy claims that the stock does fall within one of the statutory exceptions. Specifically, she asserts that the circuit court correctly found that her father gifted her a business opportunity, rendering her stock in that business nonmarital property. However, this court has not previously recognized the gift of a business opportunity, nor will we do so now.

Neither do we consider the stock a gift. A gift is a voluntary transfer of property, without valuable consideration, to another. *See Davis v. Jackson*, 232 Ark. 953, 341 S.W.2d 762 (1961). In the instant case, it is not disputed that a note receivable for Christy's shares was on the TRM books. While Christy also contends that the payment of that note with nonmarital funds rendered the stock nonmarital under section 9–12–315(b)(2) and (7), her contention is without merit. Christy's stock was not acquired in exchange for nonmarital property or income; instead, at the time it was acquired, it was exchanged for a note receivable. Because we conclude that the circuit court clearly erred in finding that the TRM stock was

nonmarital property, we must reverse the circuit court's order and remand.

John argues, for his second point on appeal, that the circuit court erred in finding that any deficiency as to the marital home should be divided equally, claiming that he will be forced to deplete the award of property he did receive in order to pay his portion of the deficiency. We have held, however, that a circuit court is obligated to consider the debts of divorcing parties "in deciding the questions of alimony, support for the children, and perhaps the division of the property." *Hackett v. Hackett*, 278 Ark. 82, 85, 643 S.W.2d 560, 562 (1982). *See also Gilliam v. Gilliam*, 2010 Ark. App. 137, at 9, 374 S.W.3d 108, 114 ("The allocation of marital debt must be considered in the context of the distribution of all of the parties' property."); *Boxley v. Boxley*, 77 Ark.App. 136, 73 S.W.3d 19 (2002). Because we hold herein that the TRM stock was marital property, reversing and remanding to the circuit court for further proceedings relating to the division of property, we need not address this issue at this time.

Reversed and remanded.

Special Justices JAMES A. MCLARTY, III, and ALEX STREETT join in this opinion.

Special Justice VADA BERGER concurs.

CORBIN and HENRY, JJ., dissent.

BROWN, GUNTER, and BAKER, JJ., not participating.

VADA BERGER, Special Justice, concurring.

I concur in the court's decision to reverse, but write separately to express two additional thoughts. First, while I agree that the stock in Tarco Roofing Materials was marital property, I do not think the

case requires the court to decide whether it is willing to recognize "the gift of a business opportunity[.]" Because I agree with the conclusion that the stock was acquired in exchange for the valuable consideration of a note receivable, I do not think it is necessary to make a broad statement about whether "a business opportunity" can be gifted. Second, I think it worth noting that nothing in the court's opinion requires the circuit court to award half, or even any, of the stock in Tarco Roofing Materials to Mr. Kelly. Pursuant to Ark.Code Ann. § 9–12–315(a)(1) (Repl. 2009), the circuit court has the authority to make an unequal distribution of even marital property "if equity demands a different division[.]" *See McDermott v. McDermott,* 336 Ark. 557, 568, 986 S.W.2d 843, 848 (1999); *see also, e.g., Hernandez v. Hernandez,* 371 Ark. 323, 327–29, 265 S.W.3d 746, 750–51 (2007). The circuit court here may well conclude that equity warrants such an unequal distribution.

DONALD L. CORBIN, Justice, dissenting.

I respectfully dissent from the majority's opinion because it completely ignores this court's long-recognized standard of review and instead substitutes its own opinion for that of the circuit court. It is axiomatic that when we review a domestic-relations case, we consider the evidence de novo and will not reverse the circuit court's findings unless they are clearly erroneous. *Baber v. Baber,* 2011 Ark. 40, 378 S.W.3d 699. The majority fails to abide by this standard.

The record in this case is replete with testimony, which I will set forth below since it is notably absent from the majority's opinion, that supported the circuit court's finding that Christian Snowden Kelly's ("Christy") interest in TRM, Inc., was nonmarital property pursuant to Ark.Code Ann. § 9–12–315 (Repl.2009). Despite the overwhelming evidence presented, the majority summarily concludes that the circuit court clearly erred in reaching this conclusion. Nowhere in its opinion, however, does the majority explain in what regard the circuit court's decision was "arbitrary or groundless." *See, e.g., Farrell v. Farrell,* 365 Ark. 465, 231 S.W.3d 619 (2006). Quite to the contrary, the record demonstrates, as evidenced by the majority's recitation of the pertinent orders, that the circuit court carefully considered and decided that the property was nonmarital.

Before turning to the analysis of whether Christy's interest in TRM was marital or nonmarital property, I think it is necessary to set forth certain pertinent facts. David Snowden, Sr., Christy's father, was a founding partner in Tarco, Inc., an Arkansas company that manufactures roofing materials. The business grew and came to include Tarco of Texas, which is a sister company engaged in the same business as Tarco, but in a different geographic location. Prior to 1996, David Sr. and his wife Judy owned all the stock in the two companies. Then, in 1996, the Snowdens transferred thirty percent of their interests in the companies to David Jr. and Christy, with fifty-five percent going to David Jr. and forty-five percent allocated to Christy. Around this time, David Sr. started looking into business opportunities in Pennsylvania, with the possibility of building a plant there, and eventually, Tarco Roofing Materials, Inc. ("TRM"), was opened there.

During the course of the divorce proceedings, the parties agreed that Christy's interests in Tarco and Tarco of Texas were nonmarital property and not subject to division. But, a dispute arose regarding the classification of Christy's ownership interest in TRM. She asserted that it

was a gift and was therefore nonmarital property or, alternatively, was acquired with nonmarital funds. John claimed that the property was marital because David Sr. could not have gifted her an interest in something he never owned and that her interest was acquired with a loan during the marriage; thus, John asserted that her interest in TRM was marital property and subject to an equitable division.

Marital property is all property acquired by either spouse subsequent to the marriage, with certain exceptions set forth in section 9–12–315(b). One such exception is property acquired by gift. Ark.Code Ann. § 9–12–315(b)(1). Property acquired in exchange for property acquired by gift is also excepted from the definition of marital property. Ark.Code Ann. § 9–12–315(b)(2). Thus, the question for us to decide is whether Christy's ownership in TRM was either a gift or acquired in exchange for property acquired by gift.

Under Arkansas law, a valid inter vivos gift is effective when the following elements are proved by clear and convincing evidence: (1) the donor was of sound mind; (2) an actual delivery of the property took place; (3) the donor clearly intended to make an immediate, present, and final gift; (4) the donor unconditionally released all future dominion and control over the property; and (5) the donee accepted the gift. *O'Fallon v. O'Fallon*, 341 Ark. 138, 14 S.W.3d 506 (2000). The rule with respect to delivery of gifts is less strictly applied to transactions between family members. *Chalmers v. Chalmers*, 327 Ark. 141, 937 S.W.2d 171 (1997). Even so, delivery must occur for a gift to be effective. *Id.* This court further explained in *Chalmers* that the gravamen of delivery is a showing of an act or acts on the part of the putative donor displaying an intention or purpose to part with dominion over the object of the gift and to confer it on some other

person. *Id.* Express words or particular conduct are not required when reasonable minds would conclude from attending circumstances that the purpose was present. *Id.; Carlson v. Carlson*, 224 Ark. 284, 273 S.W.2d 542 (1954).

Here, John takes issue with the circuit court's finding that David Sr. gifted Christy the "opportunity" to own an interest in TRM. Specifically, John asserts that an "opportunity" to own something is not an enforceable property right that can be gifted. The majority runs with this argument and concludes that Christy's interest in TRM was not acquired by gift because Arkansas has heretofore never recognized the gift of a business opportunity and will not do so now. Here, the circuit court was presented with a highly unusual fact situation where there was no precedent from the appellate courts to offer guidance, and made a reasoned decision based on the evidence presented. Now, the majority is reversing that decision because we have not previously recognized such a gift. What message does this send to the bench? I submit that today's majority opinion will have a chilling effect on a circuit judge's ability to decide complex issues when there is little or no legal authority available. Equally troubling is the majority's refusal to acknowledge the stock Christy received in TRM as a gift because it was received in exchange for a note receivable. Both of these conclusions are incorrect and unsupported by the record.

The majority, like John, too narrowly focus on the term "gift of opportunity" to support its erroneous conclusion that this is marital property. In reality, the record clearly demonstrates that David Sr. gifted Christy and David Jr. the goodwill associated with the Tarco businesses. Although goodwill is intangible, this court has recognized that it is an asset that may

be transferred or purchased for consideration. *See Williams v. Spelic*, 311 Ark. 279, 844 S.W.2d 305 (1992) (holding that when a business purchases goodwill and a trade name, it acquires a valuable property right, and that is the right to inform the public that it possesses the experience and skill associated with the previous enterprise). And, here, David Sr., as the majority shareholder in the original two Tarco businesses, was the only person who could have made such a gift. The following testimony clearly demonstrates the character of the asset that David Sr. gifted to Christy and supports the circuit court's conclusion that the asset was nonmarital property.

David Sr. testified that before taking action in Pennsylvania, he consulted Carrold Ray, his attorney, and Robert Winter, his accountant. An attorney was retained to create a separate corporation in Pennsylvania, with the company's name to be put in David Jr.'s and Christy's name. In order to start TRM, David Sr. and Judy put up stock in Tarco and Tarco of Texas as collateral to borrow the money needed to start the company. David Sr. stated that he and Judy guaranteed the necessary loans to get the company off the ground with the $6 million needed for capitalization. But, pursuant to certain estate-planning advice, none of the shares in TRM were ever put in David Sr.'s or Judy's names. In explaining that he intended to make a gift to Christy and David Jr., David Sr. testified that

> [w]hen we had the stock issued in the name of [David Jr.] and in the name of [Christy], they got a piece of paper that says Tarco Incorporated. It's their name on it. They can take that piece of paper, stick it on the wall, and it isn't worth the parchment you all got when you graduated from law school. However, what that piece of paper did do, it gave them an opportunity to own an

asset that ... could be financially rewarding. So do I feel that I gave them something, you bet I do.... I feel like I gave them an opportunity to have a financial reward that would support them in the lifestyle that both my wife and I have been blessed to have lived all these years.

David Sr. reiterated that he intended to make a gift exclusively to his son and daughter. On cross-examination, David Sr. admitted that he never owned any stock in TRM. He further explained that the shares were issued on May 31, 1996, and at that time there was a shareholder receivable from Christy for $22,500 and from David Jr. for $27,500. But, he reiterated that he believed that he was gifting to Christy and David Jr. "[t]he opportunities to own an asset that had a great value to it."

Ray, who advised members of the Snowden family on estate issues, testified as an expert on behalf of Christy. He stated that he was notified in late 1995 that David Sr. was concerned about possible estate taxes, and he met with him to discuss ways to reduce the value of the estate. Once he learned of plans for a possible new company in Pennsylvania, Ray advised that it would be a good opportunity to put the company in his children's names for estate-planning purposes and not put it in David Sr.'s name. Ray also explained that it was only David Sr.'s opportunity and only he could go up there from a legal standpoint and a financial standpoint. According to Ray, David Sr.

> still controlled 70 percent. So he was still in control even after he made these gifts. If anybody was going to form a company up there in Pennsylvania and use the Tarco name and all the intangibles that go with it, David Senior was

the one that controlled that as the owner of these 2 companies.

Ray further elaborated that David Sr. owned and operated the opportunity to go to Pennsylvania and form this company, as the new company shared everything from product name to the same marketing and legal team with David Sr.'s other Tarco companies. According to Ray, David Sr. definitely had donative intent when putting the company in his children's names. Ray further explained that although the corporate resolution stated that $50,000 in capital was contributed—$22,500 from Christy and $27,500 from David Jr.—such money was not contributed on that day but was paid at the end of 1999 when Robert Winter advised that the sums needed to be paid and removed from the books. Ray also testified that neither party ever signed a note for the indebtedness. According to Ray, the $50,000 was paid from dividends that were paid to David Jr. and Christy from Tarco. Ray ultimately opined that Christy's interest in TRM was nonmarital because it qualified as a gift pursuant to section 9–12–315(b)(1); or, alternatively, it was property acquired in exchange for property acquired by a gift pursuant to section 9–12–315(b)(2).

Cheryl Shuffield, a certified public accountant, testified that the property was nonmarital pursuant to section 9–12–315(b)(1) because it was property acquired by a gift in that David Sr. gifted Christy the opportunity to acquire the interest in TRM. According to Shuffield, that opportunity had three components: (1) the legal rights associated with use of the Tarco name and Tarco brands; (2) the financial consideration given in guaranteeing the corporate indebtedness of $6 million; and (3) the intangibles that were implicitly and explicitly transferred to TRM from its sister companies, Tarco, Inc., and Tarco of Texas. Shuffield further stated that

Christy's interest in TRM was nonmarital property under the source-of-funds[17] rule because Christy had acquired her interest in TRM in exchange for dividends she received from Tarco.

Mike Lax, a tax attorney, testified that estate planning is all about shifting opportunities and that constructive and indirect gifts occur in everyday life, such as parents paying for a daughter's wedding. There is not a transfer of funds, but a constructive gift is conferred on the child, he explained. He stated that a transfer can occur because the person who controls the intangible property right has the ability to make the decision. Lax then stated that in his opinion Christy's interest in TRM was a gift, as it was conveyed by the person who had one hundred percent of the ownership interest of that opportunity and he chose how to convey it, and it need not be reflected on a gift-tax return. Lax acknowledged that at the least the transaction qualified as a constructive gift, particularly in light of David Sr.'s clear intent to make a gift to his children.

John presented little evidence to rebut the testimony that demonstrated the nonmarital character of the asset. He presented testimony from Richard Schwartz, a certified public accountant. Schwartz testified that he found no evidence to indicate that Christy's interest in TRM was acquired by way of a gift. He said in looking at the documents related to the formation of TRM, as well as its ledgers and the stock certificates that were issued to Christy and David Jr., it was clear that Christy used money from her Tarco dividends to pay off the note receivable of $22,500, that was in effect a debt of Christy and John's. Schwartz testified that the stock in TRM was acquired during the marriage with a $22,500 note re-

ceivable to TRM and was, thus, marital property.

Brantly Buck, a tax attorney, testified that he reviewed the organization and related documents of TRM. Buck opined that the shares in the corporation were issued to David Jr. and Christy for consideration of $50,000, that they were never transferred by David Sr., as he never owned the shares, and thus the shares were owned by Christy from the beginning as marital property. He stated that it was irrelevant whether the $50,000 was characterized as a receivable, a note, or a loan to a shareholder because it is an obligation that is due and payable. Upon questioning by the court, however, Buck stated that if Christy had paid the $50,000 debt with nonmarital funds at the time of the company's creation, instead of several years later, the stock would have been nonmarital property.

Thus, the testimony presented to refute the contention that the asset was nonmarital property established two things: (1) that David Sr. never owned the *stock;* and (2) there was an accounting entry on the books of TRM that indicated Christy was responsible for paying $22,500 into the corporation. These two facts fail to support the majority's conclusion that Christy's interest in TRM was marital property. Again, the majority is so narrowly focused on those two things that it loses sight of the overwhelming testimony that this was intended to be, and was in fact, a gift from David Sr. to Christy. As we have previously recognized, the key determination in establishing that a gift has been made is whether reasonable minds would conclude from attending circumstances that the purpose was present. *See Chalmers,* 327 Ark. 141, 937 S.W.2d 171. The fact that David Sr. did not own a specific interest in TRM is irrelevant to the issue of his intent to make a gift, as the evidence clearly demon-

strated that but for David Sr.'s gift of goodwill, including his efforts and willingness to financially guarantee the new corporation, there would have been no creation of the new company or issuance of its stock. Likewise, the fact that a ledger entry showed that Christy was to pay $22,500 into TRM does not negate the fact that her interest in TRM was gifted to her by David Sr.

In conclusion the majority has substituted its own opinion for the well-reasoned and well-supported opinion of the circuit court. It is clear to me that the circuit court's opinion was not only legally sound, but also equitable. Even if the circuit court had deemed the interest to be marital, it could have still awarded all the interest in TRM to Christy in an unequal division of property, which is allowed under section 9–12–315, and which would be equitable under the facts of this case.

For the reasons stated, I respectfully dissent.

HENRY, J., joins in this dissent.