Josephine Linker Hart, Justice, dissenting. In a prior opinion, Kelly v. Kelly, 2011 Ark. 259, 381 S.W.3d 817, (Kelly I) handed down on June 16, 2011, this court reversed and remanded the circuit court’s finding that stock in a closely held corporation, Tarco Roofing Materials (TRM), was not marital property. All of the other marital property had been divided and alimony had been awarded. Only the status of the TRM stock was | isappealed. Accordingly, those awards were law of the case and not subject to being revisited by the circuit court. Clemmons v. Office of Child Support Enforcement, 345 Ark. 330, 47 S.W.3d 227 (2001). The doctrine prevents an issue already decided from being raised in a subsequent appeal unless the evidence materially varies between the two appeals. Id. The law-of-the-case doctrine extends to issues that could have been appealed and were not. SEECO, Inc. v. Hales, 334 Ark. 307, 973 S.W.2d 818 (1998). Upon remand, without holding an evi-dentiary hearing, the circuit court simply made what it called an “equitable,” uneven distribution, asserting that “the Court does not find that any drastic step is necessary or equitable in light of the record before this Court as with any division of marital property, it is inherent in the Court’s equitable powers that the division of marital property in whole or in part in fact may be unequal.” The circuit court’s ruling is wrong. First, the circuit court has no “inherent” power to make an unequal distribution of marital property. The distribution of marital property is governed by statute, Arkansas Code Annotated section 9-12-315, appropriately titled, “Property distribution.” It states in pertinent part: (a) At the time a divorce decree is entered: (1)(A) All marital property shall be distributed one-half (½) to each party unless the court finds such a division to be inequitable. In that event the court shall make some other division that the court deems equitable taking into consideration: (i) The length of the marriage; (ii) Age, health, and station in life of the parties; 1 u(iii) Occupation of the parties; (iv) Amount and sources of income; (v) Vocational skills; (vi) Employability; (vii) Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; (viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and (ix) The federal income tax consequences of the court’s division of properly. (B) When property is divided pursuant to the foregoing considerations the court must state its basis and reasons for not dividing the marital property equally between the parties, and the basis and reasons should be recited in the order entered in the matter; (2) All other property shall be returned to the party who owned it prior to the marriage unless the court shall make some other division that the court deems equitable taking into consideration those factors enumerated in subdivision (a)(1) of this section, in which event the court must state in writing its basis and reasons for not returning the properly to the party who owned it at the time of the marriage. Section 9-12-315(a)(1)(A) specifies that marital properly shall be equally divided unless, guided by considerations enumerated in the statute, equity requires an unequal distribution. The statute also requires that if the circuit court makes an unequal distribution, the court is to specify its reasons in its written order. The circuit court did not make the required findings to support an unequal distribution of marital property, and almost certainly, if it had followed the statute, it could not justify such an unequal distribution. |1SA review of this matter demands an analysis of the fully developed record before us with regard to the statutory factors. (i) The length of the marriage: The parties married in 1982, so at the time the divorce was entered, they had been married 26 years, a marriage of long duration. (ii) Age, health, and station in life of the parties: Both parties were middle-aged; Christian takes an antidepressant, but otherwise reports her health as excellent. (in) Occupation of the parties: John works as an investment advisor, a good white-collar job where his income hovers around $100,000 per year. Christian dabbles in interior decorating, but does earn an income in her part-time pursuit. Apparently, she has the ability to earn substantially more. (iv) Amount and sources of income: John has the above-referenced wages, while Christian receives distributions from stock in the amount of $16,000 per month as well as family largess, like her current residence, a $1 million home that was provided by her father. (v) Vocational skills: John is a certified investment counselor; Christian has a degree in data processing and experience as an interior decorator. (vi) Employability: Both John and Christian are employed. (vii)Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income: Christian benefitted and will continue to benefit from family money. John is not similarly situated. (viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker: During the marriage John paid the living |ir,expenses and Christian paid for the life-style enhancement. In Kelly I, this court found that the TRM stock was marital property acquired during the marriage.[2] It is law of the case that acquisition of the stock depended on the satisfaction of a marital obligation to pay for it. (ix) The federal income tax consequences of the court’s division of property: There does not appear to be any tax consequences in an equal division of the TRM stock. 117The only factor that appears to weigh in favor of an unequal division of the TRM stock in Christian’s favor is the fact that Christian satisfied the $22,500 indebtedness on the stock out of nonmarital funds. However, even here it was John’s wages that paid the parties’ day-to-day expenses, which freed up Christian’s nonmarital funds to make the investment. The circuit court was not free to disregard section 9-12-315. It is black-letter law that judicial discretion means: [Discretion bounded by rules and principles of law, and not arbitrary, capricious, or unrestrained. It is not the indulgence of judicial whim, but the exercise of judicial judgment, based on facts and guided by law or the equitable decision or what is just and proper under the circumstances. It is legal discretion to be exercised in discerning the course prescribed by law and is not to give effect to the will of the judge, but to that of the law ... A liberty or privilege to decide what is fair and equitable under the peculiar circumstances of the particular case, guided by the spirit and principles of the law. Black’s Law Dictionary 323 (6th ed. 1990). The circuit court was bound in its exercise of judicial discretion to follow section 9-12-315. It clearly erred in failing to do so. The circuit court also took up disputes between the parties concerning John’s failure to tender his portion of the deficiency resulting from the sale of the marital residence and Christian’s failure to pay alimony. The circuit court erred in deciding these issues as well. The circuit court acted wholly without authority in allowing Christian to deposit the alimony payments that she has withheld from John — nearly a quarter of a million dollars at the time the order was entered — while concomitantly requiring John to pay the deficiency resulting from the sale of the marital home. Release of those funds should be ordered forthwith. I dissent. Special Justices Amy Grimes and Jodi L. Strother join. . The explanation in Kelly I is as follows: Here, it is undisputed that Christy acquired her shares in TRM during the marriage, and the record reveals that Christy acquired the TRM stock after her father decided, for business reasons, to establish another business entity in the northeast. The stock for the new company was issued solely in the names of Christy and her brother, David, Jr., and the TRM books reflected a shareholder receivable from Christy for $22,500 and $27,500 for David, Jr. We have explained that a property’s status "does not depend upon when the property is received, but rather depends upon when the right of the property is acquired.” Thus, to the extent that either spouse acquires an enforceable right during the marriage, they acquire marital property. The record before us makes clear that Christy acquired an enforceable right when she acquired her shares of TRM stock during her marriage; therefore, the stock is marital property unless it falls within one of the exceptions set forth in section 9-12-315(b). Christy claims that the stock does fall within one of the statutory exceptions. Specifically, she asserts that the circuit court correctly found that her father gifted her a business opportunity, rendering her stock in that business nonmarital property. However, this court has not previously recognized the gift of a business opportunity, nor will we do so how. Neither do we consider the stock a gift. A gift is a voluntary transfer of property, without valuable consideration, to another. In the instant case, it is not disputed that a note receivable for Christy's shares was on the TRM books. While Christy also contends that the payment of that note with nonmarital funds rendered the stock non-marital under section 9-12-315(b)(2) and (7), her contention is without merit. Christy’s stock was not acquired in exchange for nonmarital property or income; instead, at the time it was acquired, it was exchanged for a note receivable. Because we conclude that the circuit court clearly erred in finding that the TRM stock was nonmarital property, we must reverse the circuit court’s order and remand. 2011 Ark. 259, at 7-8, 381 S.W.3d at 823-24 (internal citations omitted).