KENNETH S. HIXSON, Judge
Appellant David Atherton and appellee Cynthia Hastings (formerly Atherton) were married in 2002 and were divorced by a decree entered on May 24, 2017. On appeal from the divorce decree, David argues that the trial court erred in determining that his business, Gate Operators Plus, Inc. (Gate Operators), has a value of $175,000. David contends that Cynthia presented *760 no evidence as to the fair market value of the business and that the trial court's valuation was arbitrary. We affirm.
This case arose after David filed a complaint for divorce on August 8, 2016. Both before and during the marriage Cynthia was employed by Essick Air Products, Inc. Cynthia has a retirement account, and the marital portion of the account has a value of $122,000. David owns and operates Gate Operators, which he has owned since 2010. Gate Operators is a wholesale distributor of motors to operate gates, and David runs the business from an office he rents from a fence company. The parties acquired a home during the marriage. They have one child, who was born in 2005.
After these proceedings began, the parties stipulated to joint custody of the child, with neither party paying child support. The parties also reached an agreement regarding the division of their personal property. The remaining issues for trial pertained to the distribution of the parties' remaining assets, which consisted of Gate Operators, the marital home, and Cynthia's retirement account.
David testified at trial. During his testimony, he introduced an appraisal that valued the marital home at $280,000. Although David acknowledged that the house was in need of some repairs, he thought it was worth $280,000 as is. David introduced documentation that the principal balance owed on the mortgage was $126,000.
David also testified about his business, Gate Operators. He introduced the business's tax returns for the years 2013 through 2016. According to the tax returns, the business had a net loss of $21,593 in 2013; a net loss of $3619 in 2014; a net profit of $6298 in 2015; and a net profit of $14,474 in 2016. David testified that a December 31, 2016 balance sheet showed total equity in the business to be negative $3037.
David testified that the inventory of the business averages around $50,000, but that there is a loan against the inventory in an approximately equal amount. He further testified that in 2016 the business paid him a salary of $52,000. The business also paid for his cell phone, his gas and maintenance for his car and truck, and for some meals. The tax documents from 2016 showed these annual expenses to be $9400, $5300, and $2600.
David testified that personal relationships are important in his business, and that if he sold the business he would not be able to transfer his personal goodwill to the buyer. David stated that Cynthia thought the business was worth more than it actually is and that he was willing to give her the business for free. He stated that he wanted half of the equity in the marital home and half of the marital portion of Cynthia's retirement account, but that he was willing to give Cynthia the business with no offset related to those assets. He stated that, if he did that, he could start a new business based on his personal relationships and goodwill.
David was also questioned about financial statements he signed in 2015 and 2016, wherein David provided information about his assets in applying for bank loans. On each of these financial statements, David represented that Gate Operators was a nonmarketable security with a value of $375,000. David testified that he arrived at that figure with no advice from anyone else, including his accountant, and that it was "just basically a guess." David indicated that he had no idea what the true value of the business was but that he could not sell it for $375,000. He testified that he put an estimated value of $375,000 on the financial statements because he was told he "needed to have something there" for the loan documents. He further indicated that *761 the $375,000 value was derived from his personal goodwill.
John Rogers, a retired CPA, testified that he prepared the tax returns for Gate Operators from 2010 through 2013. During that time, Mr. Rogers had the opportunity to review the assets and liabilities of the company. However, Mr. Rogers testified that he was not qualified to give an opinion as to the value of the company. Mr. Rogers did, however, give the opinion that the marketability of the business would be "just whatever you could sell the assets for and pay off the bills." Mr. Rogers indicated that the goodwill in Gate Operators was the personal goodwill of David Atherton, and that without David there would hardly be any goodwill left in the company.
Cynthia testified that the parties' marital home needed extensive repairs estimated at $30,000. Cynthia stated that, deducting the cost of repairs from the appraised value of $280,000, she thought the house was worth $250,000. Cynthia also stated that she had been paying on the mortgage since the parties' separation, and she requested a credit for the $9,000 reduction in principal.
Cynthia also gave testimony about David's business. She stated that she had no witness to offer an opinion on the value of the business and that David had never told her what he believed it was worth. Cynthia acknowledged that the only evidence she had as to the value of the business was the $375,000 estimated value listed by David as unmarketable security on the financial statements.
Cynthia also testified that David carried a lot of cash all the time, and that at one time he had $17,000 in cash in a safe. According to Cynthia, David told her that this was from doing cash jobs at work. She further stated that David often traded work for guns. Cynthia testified that David and his accountant always tried to show a loss on the business or as small a profit as possible, and she thought that the business made substantially more money than was indicated. Cynthia requested that she be awarded all of the equity in the home as well as all of her retirement account as an offset for her one-half interest in Gate Operators, which David could keep as sole owner.
In the divorce decree, the trial court made the following findings with respect to the valuation and distribution of the marital home, the business, and Cynthia's retirement account. After taking into account the substantial repairs needed, the trial court valued the marital home at $260,000. Because Cynthia had reduced the principal balance owed on the mortgage by $9000 since the parties' separation, the trial court deducted that amount and found the divisible value of the home to be $251,000 (less the $126,000 outstanding debt). With respect to the business, the trial court made these specific findings:
The parties own a marital business, Gate Operators Plus, Inc., in which Plaintiff [David] is the sole shareholder. Based upon testimony, it is difficult to place a value on the business. In reviewing the records provided, including tax returns, financial statements, and balance sheets, it appears that the business has much greater value than that stated by Plaintiff. Plaintiff asked the Court to determine that any value of the business is in terms of personal goodwill; however, this business is not a professional corporation and argument with regard to personal goodwill in nonprofessional corporations has been soundly rejected by the appellate courts of the State of Arkansas. The determination of the value of this business is further muddied by credible testimony that there are substantial cash assets that are taken in by the business and are not necessarily in *762 the books. The value of the business is determined to be $175,000 when taking into consideration the cash assets, income, and benefits provided to Plaintiff beyond his salary.
Based on the undisputed documentation introduced at trial, the trial court found that the marital portion of Cynthia's retirement account had a value of $122,000.
Based on the property values determined by the trial court, the trial court awarded David the business as sole owner, and the trial court awarded Cynthia the marital home and her retirement account. In addition, the trial court ordered Cynthia to pay David $10,000, at which point David would execute a quitclaim deed releasing his interest in the marital home.
On appeal from the divorce decree, David argues that the valuation assigned to the business, Gate Operators, was not supported by the evidence presented. He notes that the four-year sample of tax returns for the business showed a loss in two of the four years, and only small profits of $6298 and $14,474 in the other two years. A December 31, 2016, balance sheet showed a total business equity of negative $3037. David further asserts that all of the business's inventory is secured by a loan used to purchase it. David relies on the testimony of Mr. Rogers, a retired CPA, who opined that the business had no value other than liquidation value.
David contends that the only evidence offered by Cynthia as to the value of the business was the $375,000 estimated value of the business as nonmarketable security, as indicated by David on his financial statements for bank loans. However, he asserts that this value was a product of his personal goodwill, which he claims is indivisible upon divorce. Moreover, he cites Cole v. Cole , 82 Ark. App. 47, 110 S.W.3d 310 (2003), where we held that Arkansas law requires the use of the "fair market value" standard for valuing businesses in a marital-property context. David submits that the estimated security associated with the business was "nonmarketable" as opposed to a "fair market value" as required by Arkansas law. David contends that the trial court's $175,000 valuation of the business was arbitrary and not supported by any facts, and therefore this case should be reversed and remanded.
On appeal, divorce cases are reviewed de novo. Taylor v. Taylor , 369 Ark. 31, 250 S.W.3d 232 (2007). With respect to division of property, we review the trial court's findings of fact and affirm them unless they are clearly erroneous. Id. This court will reverse the trial court's valuation of a business only if it is clearly erroneous. Miller v. Miller , 70 Ark. App. 64, 14 S.W.3d 903 (2000). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. Kelly v. Kelly , 2011 Ark. 259, 381 S.W.3d 817. We give due deference to the trial court's superior position to determine the credibility of witnesses and the weight to be given their testimony. Id.
Based on the evidence presented to the trial court, we conclude that it did not clearly err in finding Gate Operators to have a value of $175,000. The business's tax returns showed losses in 2013 and 2014, but showed increasing profits in 2015 and 2016, indicating that the business was growing and becoming more profitable. Moreover, the trial court found credible testimony that there were substantial cash assets taken in by the business that are not necessarily reflected in the financial documents. The trial court here was relying on and crediting Cynthia's testimony that David often did cash jobs, traded jobs for guns, and at one time had *763 $17,000 in cash in a safe. In his testimony David acknowledged that in 2016, in addition to paying him a salary of $52,000, the company also covered his gasoline, vehicle maintenance, cell phone, and some meals. Clearly the business was providing income and benefits in excess of what was reflected on the tax returns. And although Mr. Rogers, the retired CPA, testified that he thought the marketability of the business was the value of the assets less the debts, he also testified that he was not qualified to give an opinion on the value of Gate Operators. And, at any rate, there is no indication that the trial court found Mr. Rogers credible.
David attempts to diminish his representations on two financial statements that the value of Gate Operators as a nonmarketable security was $375,000. However, this information provided by David, which was certified by his signature to be true, correct, and complete, bore some relation to the fair market value of the business and could be considered along with the other evidence in determining its value. Here, the trial court valued the business at $175,000, which was less than half of the value represented on David's financial statements, and on this record we cannot say this valuation was clearly erroneous.
Finally, we briefly address David's claim that any value assigned to the business was a result of his personal goodwill, which he claims cannot be divided upon divorce. First of all, we cannot ascertain any significant personal goodwill in a business such as this, which involves the selling of motors to operate gates, nor did the trial court find any. More importantly, the only case cited by David in support of this argument is Brave v. Brave , 2013 Ark. App. 542, 432 S.W.3d 42. However, that case was vacated by our supreme court in Brave v. Brave , 2014 Ark. 175, 433 S.W.3d 227, and therefore is of no precedential value and cannot be cited as authority. In our supreme court's opinion in Brave , the supreme court declined to answer the issue of whether personal goodwill could be found in the valuation of a nonprofessional business, as opposed to a professional business. So, although it is settled law that personal goodwill is not a proper consideration in dividing a professional practice or business upon divorce, see Wilson v. Wilson , 294 Ark. 194, 741 S.W.2d 640 (1987), this concept has not been extended by the supreme court to encompass a nonprofessional business such as the one involved here.
In conclusion, we hold that the trial court's $175,000 valuation of the parties' business was not clearly erroneous. Therefore, we affirm the divorce decree.
Affirmed.
Klappenbach and Glover, JJ., agree.