

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
No. CV-15-176

| | |
|---|---|
| | **Opinion Delivered** October 21, 2015 |
| JAMES FELL | APPEAL FROM THE SALINE |
| APPELLANT | COUNTY CIRCUIT COURT [No. 63DR-13-336] |
| V. | |
| | HONORABLE BOBBY D. MCCALLISTER, JUDGE |
| CAMME FELL | |
| APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellant James Fell appeals the decree of divorce and amended order entered by the Saline County Circuit Court, finding, among other things, that (1) the home where he and appellee Camme Fell had lived was marital property and ordering him to pay her $12,000 for her interest in the equity in the home, and (2) the debt from four credit cards, totaling $19,254, was marital debt to be split equally between the parties. We affirm.

The following facts are not in dispute. In June 2007, James, single at the time, bought a house for $111,000. He made an $11,000 down payment and put his name on the deed and mortgage for the home. Soon after, Camme, his girlfriend at the time (who was pregnant with their child), and her two children from a prior relationship, moved in. In September 2007, the parties' son, F.F., was born. In May 2008, James and Camme married. In December 2012, James refinanced the house. Again, only his name was placed on the deed and mortgage. James made all the mortgage payments for the home from his separate bank account.

SLIP OPINION

In March 2013, Camme filed for divorce. At the hearing, Camme sought an interest in the equity in the house, along with a determination as to whether the credit-card debt was marital debt. James contended that Camme was not entitled to any interest in the equity of the home because the home was his nonmarital property. He also argued that the credit-card debt was Camme's nonmarital debt.

In addition to the undisputed facts, Camme testified that she and James had searched for the home together and that while they were married they made several improvements to the home. She said that they extended the driveway, added a covered patio, replaced the flooring and carpet, repainted the interior, and added new cabinets and granite countertops in the kitchen. Camme testified that the value of the home was $125,000. With regard to the credit cards, she said that she opened the accounts in James's name and that he was aware of them. She added that James occasionally made payments on them and that the credit cards were used to purchase Christmas presents and groceries. She testified that the debt was approximately $19,000.

James testified that it was never his intention for Camme to have an interest in the house. He said that he, alone, found and bought the house and that he did not ask Camme if she liked it. He stated that he made all the mortgage payments and that she made none. He also testified that he knew that Camme was using credit cards to pay bills during their marriage, although he never asked her what bills she was paying, and he was unaware of these four particular credit cards. He said that he "definitely" did not know that the cards were in his name. He testified that the credit-card debt was $18,000.

2

SLIP OPINION

On February 12, 2014, the trial court entered a decree granting the divorce. Relevant to this appeal, the trial court found that while the home had been purchased prior to the marriage, "there [was] not any doubt in the mind of the Court that the intention of the parties when this property was purchased was to make it a marital home and as such, they have added to and treated the property as marital." In dividing the $35,000 equity in the home,[1] the trial court found that James was entitled to his $11,000 down payment plus $12,000 and that Camme was entitled to the remaining $12,000 equity. The trial court also found that James was aware that the credit cards existed and that he may have paid the bills from the credit cards during the marriage. As such, the court found that the credit-card debt, totaling $19,254, was marital debt to be equally divided between the parties. James appealed from the decree; however, his appeal was dismissed for lack of a final order. *Fell v. Fell*, 2014 Ark. App. 627. On remand, the trial court entered an amended order that resolved the parties' rights to the subject matter in controversy, and this appeal followed.

With respect to the division of property, we review the trial court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence; the division of property itself is also reviewed, and the same standard applies. *Farrell v. Farrell*, 365 Ark. 465, 469, 231 S.W.3d 619, 622 (2006). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.*, 231 S.W.3d at 622. In order to

---

[1]There was evidence that the value of the home was $125,000 and that the mortgage was $90,000, leaving $35,000 in equity in the home.

demonstrate that the trial court's ruling was erroneous, the appellant must show that the trial court abused its discretion by making a decision that was arbitrary or groundless. *Id.*, 231 S.W.3d at 622. We give due deference to the trial court's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Id.*, 231 S.W.3d at 622.

James's first point on appeal is that the trial court clearly erred in finding that the home he bought before he was married was marital property. He claims that he used his separate nonmarital funds to make the down payment; the home was titled and mortgaged in his name; he paid all the mortgage payments from his separate bank account; and Camme never contributed any funds to the mortgage. He also claims that the trial court clearly erred in finding that his nonmarital home "morphed" into marital property based on the parties' intent that the house was to be their marital home. According to James, he should have been awarded all the equity in the home.

Arkansas Code Annotated section 9-12-315(a)(1)(A) (Repl. 2009) provides that, at the time a divorce decree is entered, all marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable. "Marital property" means all property acquired by either spouse subsequent to the marriage, except property acquired prior to marriage. Ark. Code Ann. § 9-12-315(b)(1). Based on section 9-12-315(b)(1), it is clear that property acquired prior to marriage is nonmarital property. *Farrell*, 365 Ark. at 471, 231 S.W.3d at 623.

4

SLIP OPINION

It is undisputed that James acquired the home prior to his marriage with Camme. Therefore, the home was nonmarital property, and the trial court's finding that his home was marital property is clearly erroneous. Although the trial court incorrectly declared that the home was marital property, the court did not equally divide the $35,000 equity in the home pursuant to section 9–12–315(a)(1)(A). Instead, it treated the home as nonmarital property under section 9–12–315(a)(2).

Section 9–12–315(a)(2) provides that all nonmarital property shall be returned to the person who owned it prior to the marriage unless the court shall make some other division that the court deems equitable taking into consideration those factors enumerated in subdivision (a)(1), in which event the court must state in writing its basis and reasons for not returning the property to the party who owned it at the time of the marriage. Ark. Code Ann. § 9–12–315(a)(2). Under this section—and consistent with the correct conclusion that the home was nonmarital property—the trial court awarded all the equity in the home to James less $12,000, which was awarded to Camme. Specifically, the trial court first found that James was entitled to his $11,000 down payment. Instead of returning the remaining $24,000 equity to James, the court found that the parties had "added to" the home during the marriage and awarded James and Camme each $12,000.

The trial court's distribution of a portion of James's nonmarital property to Camme is also supported in Arkansas case law. In *Box v. Box*, 312 Ark. 550, 552, 851 S.W.2d 437, 439 (1993), our supreme court stated that "[e]arnings acquired subsequent to marriage are classified as marital property." *Id*. at 554, 851 S.W.2d at 440 (citing *Day v. Day*, 281 Ark.

261, 663 S.W.2d 719 (1984); Ark. Code Ann. § 9-12-315(b)). The court further stated that a trial court may find that "a nonowning spouse is entitled to some benefit by reason of marital funds having been used to pay off debts on the owning spouse's nonmarital property." *Id.* at 554–55, 851 S.W.2d at 440 (citation omitted). Citing the trial court's discretion to divide both marital and nonmarital property pursuant to section 9-12-315(a), the court reversed and remanded the trial court's refusal to consider the use of marital funds to pay down the debt on the appellee's nonmarital property. *Box*, 312 Ark. at 555, 851 S.W.2d at 440. The supreme court then affirmed the trial court's division of the increase in the value of the appellee's nonmarital home based on the improvements made to it using marital funds. *Id.* at 556–57, 851 S.W.2d at 441 (citing Ark. Code Ann. § 9-12-315(a)); *see also Jones v. Jones*, 2014 Ark. 96, at 5, 432 S.W.3d 36, 40 (holding that nonmarital property cannot transform into marital property by virtue of the expenditure of marital funds to reduce debt or make improvements; yet citing with approval the holding in *Box* that a nonowning spouse is entitled to some benefit when the proof establishes that marital funds have been expended to improve or reduce the debt on the other spouse's nonmarital property).

Under our de novo review in division-of-marital-property cases, *Gilliam v. Gilliam*, 2010 Ark. App. 137, at 7, 374 S.W.3d 108, 114, we must consider the evidence that marital funds were used to pay the mortgage and make improvements on James's house. Thus, this record supports a finding that Camme was entitled to "some benefit." Accordingly, we hold

that the trial court did not clearly err in awarding her a $12,000 interest in the equity of the nonmarital home, and we affirm on this point.

James's second point on appeal is that the trial court clearly erred in ordering the parties to equally divide the debt from four credit cards. He conceded that he knew Camme had been using credit cards in general to pay bills, but he contends that he did not know these particular credit cards existed or that they were in his name.[2] The trial court did not believe James. The trial court, in its letter opinion, found that "the law doesn't allow someone to hide their eyes as debt is being incurred to avoid responsibility for it." It further found that there was no evidence that James was unable to determine the existence of the accounts and that the evidence showed that he did take over all the accounts at the time of the divorce. The trial court stated, "[James] could have stopped these [debts] from being incurred, but instead chose to place his head in the sand." In contrast, the trial court credited the testimony of Camme, who said that James knew about the credit cards, that he occasionally made payments on them, and that she only used them to pay for marital items (groceries and Christmas gifts).

In reviewing the trial court's findings, we defer to the court's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Keathley v. Keathley*, 76 Ark. App. 150, 157, 61 S.W.3d 219, 224 (2001). Because the trial court's findings on James's second point on appeal are primarily credibility findings, which

---

[2]He also argues that there was insufficient evidence presented to support the trial court's findings that the debt on the four credit cards was $19,000. However, he never made this argument below, and it is not preserved for appeal. *Finley v. Farm Cat, Inc.*, 103 Ark. App. 292, 297, 288 S.W.3d 685, 690 (2008) (holding that an issue not raised below is not preserved for appellate review).

we do not disturb, we affirm on this point and hold that the trial court was not clearly erroneous in finding that the credit-card debt was marital to be equally divided between the parties.

Affirmed.

KINARD, GRUBER, and GLOVER, JJ., agree.

VIRDEN and HIXSON, JJ., dissent.

**BART VIRDEN, Judge, dissenting.** I agree with the majority that the lower court's findings that the credit-card debt was marital property to be equally divided was not clearly erroneous. I write separately because I disagree with the conclusion that the award of $12,000 representing Camme's equity interest in James's nonmarital property was appropriate in this instance.

With respect to the division of property, we conduct a de novo review, and we will affirm the trial court's findings of fact unless they are clearly erroneous. *Farrell v. Farrell*, 365 Ark. 465, 469, 231 S.W.3d 619, 622 (2006). Here, the lower court found "that the entirety of the marital home is marital property with the exception of the initial $11,000 down payment," and that "[t]he conduct of the parties" led the court to believe that "the intention of the parties when this property was purchased was to make it a marital home and as such, they have added to and treated the property as marital." Because James owned the property prior to marrying Camme, the finding that the home was marital property was clearly erroneous, and the majority agrees. *See Box v. Box*, 312 Ark. 550, 554, 851 S.W.2d 437, 440 (1993) ("Appellee owned these properties prior to marrying appellant. Section 9–12–315(b)(1)

8

therefore excepts these two properties from the definition of marital property. In other more affirmatively phrased words, these two properties are classified as non-marital properties.").

Our division–of–property statute requires that all marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable, in which case it may make some other division after considering the factors enumerated in the subdivision of the statute. Ark. Code Ann. § 9–12–315(a)(1)(A). It further provides that all other property shall be returned to the party who owned it prior to marriage, unless it deems some other division more equitable, again taking into consideration the (a)(1) subdivision factors. Ark. Code Ann. § 9–12–315(a)(2).

The majority agrees that the trial court's finding that the home was marital property is clearly erroneous. Using its power under a de novo review, it contends, however, that the award itself was not clearly erroneous because the lower court "treated the home as non–marital property under section 9–12–315(a)(2)," and because Camme was entitled to "some benefit" because marital funds were used to pay the mortgage and make improvements on James's separate property.

While I agree that, pursuant to a proper analysis under *Box* and its successors, Camme is indeed entitled to some interest in the home and its equity, the majority's reasoning confuses the difference between "equitable" and "equal" and places itself in the position of the trial judge. Furthermore, to claim the trial court "treated the home as non-marital property" categorically ignores the unambiguous wording of the trial court that "that the

entirety of the marital home is marital property with the exception of the initial $11,000 down payment."

If the lower court had been correct that the home, less the down payment, was marital property, then returning the $11,000 down payment to James and then making the equal distribution of $12,000 to each party would have been appropriate under our statute. But because the lower court erred in concluding the home was marital, it could not have possibly taken into consideration the (a)(1) subdivision factors to make "some other division" as required in section 9–12–315(a)(2). Nor can I say that the one sentence provided in the order that "the intention of the parties when this property was purchased was to make it a marital home and as such, they have added to and treated the property as marital" adequately satisfies the statutory requirement that, in making such a division "the court must state in writing its basis and reasoning for not returning the property to the party who owned it at the time of the marriage." Ark. Code Ann. § 9–12–315(a)(2).

To affirm here would require us to act as a super fact-finder and to rely too heavily on conjecture. That I will not do. If, in fact, the trial court had found it equitable to award "some benefit" to Camme from James's separate property, it should have stated its reasoning for doing so pursuant to the statute. As such, I would reverse and remand with the instruction to divide the property in a manner consistent with section 9–12–315(a)(2) and our supreme court's holding in *Box*.

HIXSON, J., joins.

*Gregory E. Bryant*, for appellant.



*Camme Fell*, pro se appellee.