Cite as 2020 Ark. App. 516

# ARKANSAS COURT OF APPEALS
DIVISION III
**No.** CV-19-647

| | |
|---|---|
| EDWARD LEE HARDIN<br><br>APPELLANT<br><br>V.<br><br>SHELIA HARDIN<br><br>APPELLEE | **Opinion Delivered:** November 18, 2020<br><br>APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT<br>[NO. 35DR-16-359]<br><br>HONORABLE LEON N. JAMISON, JUDGE<br><br>AFFIRMED IN PART; REVERSED IN PART |

### RITA W. GRUBER, Chief Judge

After a twelve-year marriage, Edward Lee Hardin and Shelia Hardin were divorced by a decree entered on May 19, 2017, by the Jefferson County Circuit Court. Lee appeals from a supplemental decree entered on March 18, 2019, dividing various properties owned by the parties. He challenges two of the circuit court's findings: (1) the circuit court erred by failing to deduct the balance of a Simmons Bank loan from the proceeds of the sale of the parties' marital residence before equally distributing the remainder to the parties; and (2) the circuit court erred in determining that repayment by Lee of margin loans was marital property and ordering him to pay Shelia half of the amount of the repayment. After a de novo review, we affirm on point one and reverse on point two.

We review domestic-relations cases de novo on the record, and we will not reverse a circuit court's finding of fact unless it is clearly erroneous. *Grimsley v. Drewyor*, 2019 Ark.

App. 218, at 19, 575 S.W.3d 636, 647. With respect to the division of property, we review the circuit court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence; the division of property itself is also reviewed, and the same standard applies. *Fell v. Fell*, 2015 Ark. App. 590, at 3, 473 S.W.3d 578, 580. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* In order to demonstrate that the circuit court's ruling was erroneous, the appellant must show that the circuit court abused its discretion by making a decision that was arbitrary or groundless. *Farrell v. Farrell*, 365 Ark. 465, 469, 231 S.W.3d 619, 622 (2006). We give due deference to the circuit court's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Id.*

Both parties had previously been married to others and owned property that remained nonmarital throughout their marriage to each other. In addition, Lee inherited property during the marriage that remained his separate property. The findings that Lee challenges on appeal are similar in that both involve money Lee borrowed using his separate property as collateral for the loans. We turn first to Lee's argument regarding the marital residence.

## I. *Idylwood Residence*

Shortly after the parties were married, Lee purchased a home at 8 Idylwood in Pine Bluff for approximately $290,000. To finance the home, he borrowed 80 percent of the purchase price of the home from a lender who placed a mortgage on the home. This loan was refinanced a few years later and was held by Wells Fargo at the time of the divorce. Lee

also borrowed $70,000 from Simmons Bank to make the $59,000 cash down payment on the home. The remainder of the $70,000 was used for moving expenses and to make updates and repairs on the home. This loan was secured by premarital CDs owned by Lee at Simmons. Simmons did not take any interest in, or mortgage on, Idylwood. Four years after Lee purchased Idylwood, he transferred the home by quitclaim deed to Shelia and himself as tenants by the entirety.

At the time of the divorce, the balance owed on the Wells Fargo mortgage was approximately $120,000. The outstanding balance on the Simmons note was $35,000. The court ordered that the property be sold, the unpaid balance of the Wells Fargo note be paid from the proceeds, and the net proceeds be split equally between the parties. Lee had asked the court to order the unpaid balance on the Simmons note to also be paid from the proceeds of the sale before splitting the remainder. He argued that, like the Wells Fargo loan, the money was borrowed from Simmons to purchase Idylwood. He contended that the Wells Fargo mortgage would have been much higher had he not borrowed money for the down payment from Simmons.

The court denied Lee's request, finding as follows:

> The defendant borrowed $70,000 from Simmons Bank, using three non-marital CDs as collateral. This loan has a principal balance of $35,000. Once the defendant transferred the loan proceeds to Hardin and Associates, these funds lost their identity as non-marital property. The defendant used these funds as part of a down payment on this home, to make repairs, add updates, and pay moving expenses. The defendant testified he was not seeking repayment of his payments that reduced the principal balance of the Simmons loan to $35,000. The defendant is not entitled to a credit of $35,000 because these funds lost their identity as non-marital property.

On appeal, Lee argues that the Simmons loan was marital debt used to purchase marital property and should be paid from the proceeds of the sale of the marital residence.

3

He argues that his testimony is undisputed that if he had not used his CDs as collateral for the loan to make the down payment on Idylwood, the Wells Fargo mortgage would have been much higher. He testified that he borrowed the money to avoid the cost of mortgage insurance and to obtain a lower interest rate. He also testified that the Simmons loan, unlike the Wells Fargo loan, allowed him to repay on his own terms instead of in fixed monthly payments. Finally, he notes that he did not seek reimbursement for the entire loan, only the $35,000 balance owed at the time of the sale of the property.

Citing our opinion in *Lyle v. Lyle*, 15 Ark. App. 202, 691 S.W.2d 188 (1985), Shelia argues that there is a presumption that the purchase of marital property with nonmarital assets results in a gift from the contributing spouse to the noncontributing spouse. She also contends that a divorce court has the authority to allocate marital debt "on the basis of their relative ability to pay." She points to the court's recognition in its order making an unequal division of marital property in her favor of Lee's much higher income and his better opportunity to acquire more assets.

Lee purchased the Idylwood property in his sole name in September 2006. He alone made the decisions regarding how to finance that purchase. He chose to borrow most of the purchase price from Wells Fargo, which loan was secured by a mortgage on the home. He also borrowed $70,000 from Simmons, which was not secured by the home but backed by his nonmarital CDs. Part of that money was used as a down payment. Shelia did not sign either note. In January 2011, Lee deeded the property to himself and Shelia as tenants by the entirety. There is no evidence that he either told Shelia about the Simmons note and its connection to Idylwood or that he asked her to sign the note. At that point, Lee gave half

4

of the equity in the home to Shelia. We hold that the court's decision not to require the note to be paid from the proceeds of the sale of Idylwood is not clearly erroneous.

Moreover, Arkansas Code Annotated section 9-12-315 (Repl. 2015), requiring marital property to be divided equally unless the court finds that such a division is inequitable, does not apply to the division of marital debt. *Williams v. Williams*, 82 Ark. App. 294, 308, 108 S.W.3d 629, 638 (2003). Although Lee does not contend that this is marital debt that Shelia should share in paying but only that the circuit court erred in failing to require that the debt be paid from the proceeds of the sale of the residence, we note that there is no presumption that an equal division of debts must occur. *Id*. The circuit court has authority to consider the allocation of debt in the context of the distribution of all of the parties' property, and its decision to allocate debt to a particular party or in a particular manner is a question of fact and will not be reversed on appeal unless clearly erroneous. *McClure v. Schollmier-McClure*, 2011 Ark. App. 681, at 5. A circuit court's allocation of debt based on the parties' relative ability to pay is not a decision that is clearly erroneous. *Ellis v. Ellis*, 75 Ark. App. 173, 177, 57 S.W.3d 220, 223 (2001).

II. *Margin Loan*

We turn now to Lee's argument that the circuit court erred in ordering him to pay Shelia half of the amount of margin loans that Lee repaid in full in 2013. To fully understand the issues surrounding this argument, we set forth the portions of the circuit court's order concerning both this point on appeal—paragraph 5 below—and the court's finding that marital funds, plus the increase in value of those funds, transferred into Lee's nonmarital

5

trust account constitute marital property—paragraph 4 below—which has not been appealed.

4. **$5000 Edward Jones Trust Account**: Between October 7, 2013, and March 3, 2014, the defendant transferred $28,500 from his Edward Jones Trust Account, a nonmarital account, to Hardin and Associates, a marital account. Exhibit 15 showed these transfers were not margin transfers. Hardin and Associates is a marital account. On May 29, 2014, the defendant transferred $5000 back to the Edward Jones Trust Account. Upon the transfer to a marital asset, namely, Hardin and Associates, these funds lost their identity as marital property. This transfer of $5000 was a transfer of a marital asset to a non-marital asset to the defendant's Edward Jones Trust Account. This $5000 should be characterized as marital property with a value of $6,050.34.

5. **Hardin and Associates May 7, 2013, and May 30, 2013**. On May 7, 2013 the defendant transferred from his Hardin and Associates account $40,000 and $8463.17 on March 30, 2013, to the defendant's Edward Jones Trust Account. It did not matter whether the loan proceeds were margin or nonmargin. Once the defendant placed the loan proceeds in Hardin and Associates, these funds lost their identity as non-marital. These funds have a marital value of $62,535.01.

Lee is a certified public accountant who provides his services under the business name Hardin & Associates. He testified that to manage the business's cash flow, he used loans from a margin loan account at Edward Jones. Edward Jones made the loans using Lee's Edward Jones trust account, nonmarital property, as collateral for the loans. No money was transferred out of or into his trust account; the trust account merely served as collateral for the loans, which testimony indicated that Lee used like an open line of credit for his business.

On occasion, Lee also transferred money from his trust account into Hardin & Associates to pay business or personal bills. Paragraph 4 above describes his transfer of $28,500 from his trust account into the Hardin & Associates account. The circuit court found that his transfer of those funds from a nonmarital account into a marital account changed their identity from nonmarital to marital property. Lee repaid himself $5000 of the

6

$28,500 by transferring marital property—that is, funds from his business account—into his trust account. The court found this constituted a transfer of a marital asset to a nonmarital asset and that the $5000 should be characterized as marital property with a current value of $6,050.34 (based on plaintiff's expert's undisputed valuation testimony). Lee has not appealed from this finding.

The finding Lee challenges is in paragraph 5 above in which the court required Lee to pay Shelia half of margin loan repayments in the amount of $48,463.17, which the court found "lost their identity as non-marital." The court relied on Shelia's expert, Charles Searcy, for a stated value of these funds at the time of the divorce of $62,535.01. Lee did not dispute that this would have been the value of the funds if they had been placed in his trust account. His argument at trial and to us is that these funds were not placed in his trust account; the funds do not now exist as property at all, marital or nonmarital, as they were used to repay margin loans four years before the parties divorced; and the court therefore erred in requiring him to reimburse Shelia for half of these funds.

It is undisputed that Lee borrowed money from Edward Jones from 2008 through at least 2013 for his business, both by taking money from his nonmarital trust account and by borrowing from Edward Jones using his trust account as collateral. The confusion regarding these funds seems to be whether Lee repaid himself by depositing marital funds into his nonmarital trust account. Mr. Searcy testified on Shelia's behalf regarding the value of the parties' marital and nonmarital property. He created a document listing the parties' marital and nonmarital accounts, listing various deposits into those accounts, and assigning 2017 values for some of those deposits. This document was introduced as Plaintiff's exhibit 22.

Mr. Searcy said that he had procured the information to create the exhibit from documents provided by Lee and "numbers" given to him by Shelia's attorney. Relevant to Lee's point on appeal, two of the entries on the exhibit refer to "deposits" made by Hardin & Associates into Lee's trust account: one for $40,000 on May 7, 2013, and one for $8,463.17 on May 30, 2013. Mr. Searcy testified that these amounts were "deposited" into Lee's "trust account." He assigned a 2017 value for these two "deposits" of $62,535.01. When asked on cross-examination whether Mr. Searcy knew if these funds were actually used to pay off a margin loan to Edward Jones, he said he did not "have any idea," although he admitted that there was a notation on the sheet where he obtained this information that it "was a repayment of margin." He also admitted he had the documents to trace the margin loans to confirm where the funds went but said he had not been asked to do so.

Lee testified that he often borrowed from the Edward Jones margin loan account rather than from a traditional bank because the interest rate was lower, he was not required to submit a financial statement, and funds were obtained the day the loan was requested. He testified that the two disputed transactions were not transfers of funds into his trust account but were repayments of a margin loan. He explained that a margin loan constituted a loan in which he "pledged" his securities at Edward Jones as collateral for the loan. Interest is added to the loan amount until it is repaid. He testified that the margin loan did not affect the value of his trust account, which fluctuated based on market conditions. Mr. Searcy confirmed Lee's description of a margin loan and agreed that the brokerage account serves only as collateral for the loan and that "nothing leaves the brokerage account." Defendant's exhibit 13 is a copy of Lee's margin loan activity at Edward Jones showing all loans, interest

charges, and repayments from December 2008 through May 30, 2013, when the balance was brought to zero by the final margin loan repayment from Hardin & Associates of $8,463.17. The document also shows a payment of $40,000 from Hardin & Associates on May 7, 2013. The monthly brokerage statements entered in evidence list the loan balance outstanding at the end of each month from 2009 through May 31, 2013, which correlates with the amounts set forth on exhibit 13. The statement for May 31, 2013, recognizes the loan balance of zero, the $48,463.17 payment made, and supports Lee's testimony that the payment was used to extinguish the margin loan and was not transferred into his trust account. There is no evidence that these funds were used for any purpose other than to repay a loan. Therefore, they do not currently have a value of $62,535.01, and testimony that they would have had that value if they had been invested in Lee's trust account is not relevant.

The court determined that once Lee "placed the loan proceeds in Hardin and Associates, these funds lost their identity as non-marital." While we agree that any funds borrowed by Lee and placed in Hardin & Associates would, in fact, have been marital property, funds were long ago expended to pay off the loan at Edward Jones. We are not presented in this case with an argument that Lee used these funds inappropriately or in a manner that disadvantaged Shelia. Nor has Lee asked that Shelia be required to repay any margin loans. Viewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed, and we hold that this finding is clearly erroneous and reverse on point two.

Affirmed in part; reversed in part.

VIRDEN and SWITZER, JJ., agree.

*Brockman, Norton & Taylor*, by: *C. Mac Norton*, for appellant.

*Gibson & Keith, PLLC*, by: *Paul W. Keith*, for appellee.